David Stebbins (pro se Plaintiff)
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                                                        PLAINTIFF

VS.                                        Case 3:22-cv-00546-JSW

EMILY REBÔLO, ET AL                                                         DEFENDANTS

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Memorandum of Points and Authorities in Support of my Emergency Motion for Temporary Restraining Order in the above-styled action.

### FACTS OF THE CASE

1. Across multiple dates, multiple individuals were allowed to upload videos which infringed on my copyright. Despite me issuing statutorily-compliant DMCA Takedowns on all of these infringements, Youtube has not taken down any of them. I brought this action to seek damages and injunctive relief from Youtube LLC.

2. While we litigate this matter, I ask that the defendant be ordered to disable access to the infringing videos so they cannot be distributed while the case is being adjudicated.

### ARGUMENT

3. A motion for a temporary restraining order is held to the same standards as a motion for

preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." See Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008).

**High Likelihood of Success on the Merits**

4.  "[T]here are only two elements necessary to the plaintiff's case in an infringement action: ownership of the copyright by the plaintiff and copying by the defendant." See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1151 (9th Cir. 1986).

5.  For two of the three registered copyrights, those two elements will be exceptionally easy to prove. Since I have registrations on all three of these copyrights, I am entitled to a statutory presumption of their validity. See 17 USC § 410(c). The second essential element – copying by the defendant – is so obvious in this case that requiring I "prove" it would be laughable.

6.  Since these uploads amount to nothing more than verbatim uploads of the copyrighted works, there is no hope for any of these works being considered fair use. So that does not reduce, even slightly, my likelihood of success on the merits.

7.  However, there is one issue the defendants have hinted that they plan to raise, so I feel I should address it:

<u>Validity of April 10, 2021 stream</u>

8.  Before I continue, I want to point out that the defendants have only indicated that they plan to challenge the validity of this one stream. Therefore, even if this Court ultimately rules against me on the validity of this one registered copyright, I still have a very high likelihood

(bordering on a 100% chance) of success on the merits for the majority of the counts of copyright infringement in this action. So I have still satisfied this essential element for a temporary restraining order.

9. That being said, to show you that I have a high likelihood of prevailing on the validity of the April 10 stream, please see **Exhibit A**. When the defendant filed its untimely motion to dismiss in violation of the notice of voluntary dismissal, I sought leave to file a supplemental brief in order to respond substantively to the challenges made to the validity of the statute. See Stebbins v. Polano, 4:21-cv-04184-JSW, Dkt. 135. Leave to grant this supplemental brief was denied (see Dkt. 136), but if leave had been granted, **Exhibit A** is the brief I would have filed. Now that the defendants have attempted to re-appear in the Polano case as intervenor defendants, they have re-introduced these arguments. If that motion is not stricken by the court pursuant to the Motion to Strike filed on April 27, 2022, I will update this brief so as to include a substantive response to Youtube's accusations of vexatious litigation.

10. As you can see, my supplemental brief tears the defendants' challnege to the validity of my copyright to shreds. Their challenge – which was based entirely on the minutia of my complaint – is a hyper-literal interpretation that does not even make sense in-context, as it is clear from reading those paragraphs that the statements as to how the streaming software came on were clearly just a guess, not something based on personal knowledge. The stream clearly contained, not a lot, but the legally required minimum amount of creativity and expression.

11. Also, I argue in that brief that 17 USC § 411(b)(1) is the exclusive means of challenging the validity of a timely-registered copyright. As it turns out, there is some 9th Circuit case law supporting my legal theory. See Lamps Plus v. Seattle Lighting Fixture Co., 345 F. 3d 1140, 1145

(9th Cir. 2003):

> "In this circuit, however, we have held that "inadvertent mistakes on registration certificates do not invalidate a copyright and thus do not bar infringement actions, unless … the claimant intended to defraud the Copyright Office by making the misstatement. Absent fraud, `a misstatement or clerical error in the registration application … will not invalidate the copyright nor render the registration certificate incapable of supporting an infringement action."

12.     So even if I had failed to disclose something to the Copyright Office, it still does not invalidate my copyright unless I had actually *intended to defraud them*. Since the defendants cannot plausibly allege this fact, they cannot invalidate my copyright solely on the fact that I did not "disclose" anything.

13.     Nor can they rely on the exception listed in the Lamps Plus case, which states that "although the court would ordinarily defer to the judgment of the Copyright Office when the question … is a close one, that is impossible to do when the Copyright Office has not had a fair opportunity to pass on the question because of the copyright claimant's failure to advise the Office." Here, there was never any point in the application where I even *could* have disclosed a supposed lack of creativity (assuming that the stream even was devoid of any and all creativity in the first place, which, as **Exhibit A** clearly demonstrates, is not the case, nor did I ever claim it was), and on top of all that, the Copyright Office clearly had the opportunity to view the stream directly to screen it for minimal creativity. Despite having the minimal creativity (or lack thereof) directly in front of them, they still saw fit to grant registration. Therefore, I literally *couldn't* have lied about the lack of creativity in the stream, even if I wanted to! For this reason, the 9th Circuits default policy of deferring to the judgment of the Copyright Office should take hold.

14.     This is in stark contrast to the issue of originality, which was the hinging issue in the Lamps Plus case. In that circumstance, it is entirely plausible that the Copyright Office would not know about any pre-existing copyrighted designs. But with the issue of minimal creativity, the fact that the applicant must submit a copy of the work to be registered means that the Copyright Office necessarily has all the relevant facts right in front of them and are fully capable of making a well-informed judgment.

15.     So as the Court can clearly see, I still have a very high likelihood of prevailing on the validity of the copyright of the April 10 stream. Since this is the closest the defendant can possibly come to casting doubt on any element of any of the three claims for copyright infringement, that means I have demonstrated a high likelihood of success on the merits in this action.

## Probability of Irreparable Harm

16.     Technically, the law does not state that I am exempt from showing a high likelihood of rreparable injury. Instead, what the law says is that there is a presumption of high likelihood of irreparable injury in a copyright infringement case, as long as I show a high likelihood of success on the merits. "In a copyright infringement action, however, the rules are somewhat different. A showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm." See Flexible Lifeline Systems, Inc. v. Precision Lift, Inc., 654 F. 3d 989, 994 (9th Cir. 2011).

17.     However, because a motion for preliminary injunction is just supposed to be denied anyway if the movant has not shown a high likelihood of success on the merits, it is effectively the same thing as that element not being required. If anything, the lack of likelihood of

irreparable harm can be an affirmative defense to a preliminary injunction.

## Balance of Equities

18.     This balance tips in my favor almost by default. I have the exclusive right to distribute my own copyrighted works. The Defendant, by contrast, does *not* have the right to host content on its platform that is copyrighted by me. Here, the balance of equities tips in my favor almost by default, as the defendants have virtually no equity of their own to balance.

19.     The only way they could possibly have some equity to be balanced is if they could make a plausible claim to fair use. If these videos are fair use, then that would override my copyright. However, (A) that would go more towards my likelihood of success on the merits than the balance of equities, and (B) since these videos are nothing but verbatim re-uploads with no criticism or commentary whatsoever (aside from maybe the occasional title with commentary), their chances of claiming fair use are astronomical.

## Public Interest

20.     The public policy has a strong interest, not just in enforcing the law for its own sake, but also in protecting the copyrights of artists and creators. Just for its own sake, stopping the unauthorized spread of this content is in the public interest, simply because *copyright* is in the public interest.

21.     If that isn't enough, the defendants in this case have offered no explanation or motive for their behavior beyond merely that they want to do this. Many of them have gone out of their way to make it clear that there is no motive beyond this, and almost none of them have *offered* a better motive that than this. However, it does not matter how much personal disdain or rancor the infringers have towards the rightsholders, or how little they believe the Plaintiff "deserves" to

profit off his own work. In fact, those factors just make the situation worse, as the Courts also have a publicy interest in deterring acts of pure malice.

22. The few defendants who have attempted to offer anything more than pure malice have argued that, because I did[1] some bad things in the past, I deserve the harassment I am getting as a natural consequence of my criminal behavior.

23. However, that does the defendant no favors. It also does not matter what the plaintiff may or may not have done in the past to "deserve" punishment. Such behavior on the part of the defendants simply goes from "pure malice" to "vigilante justice," which is equally against the public interest.

24. Therefore, this preliminary injunction is in the public interest.

## CONCLUSION

25. This temporary restraining order is warranted in the instant case. I have a nearly-100% likelihood of success on the merits. The only claim of infringement which I seek to have temporarily restrained in this case that has even a remote challenge placed against it is Infringement #33. Even in the off chance that the defendants manage to negate my strong likelihood of success on the merits (lord knows they're desperately trying to get their word in like they feel their opportunity to do so is rapidly running out), I am still entitled to a TRO against all other counts of infringement. Even the one infringement which is currently subject to even a minor challenge – Infringement #33 – said challenge is based on an extremely strained reading of the Second Amended Complaint in the Polano case that does not hold up to scrutiny, requires that the Court completely override the judgment and decisionmaking power of the US Copyright

---

1 And by "did," I mean I was *charged* with a crime many years ago, but was never convicted, and the records of that case have been sealed against public inspection.

Office, and is not even compliant with precedent.

26. Because I have demonstrated a high likelihood of success on the merits, and this is a case for copyright infringement, I am not required to independently show a likelihood of irreparable harm. The defendants have almost no equity of their own to balance, since they do not have a right to host content on their websites which they do not own. If they allege that the content is not copyrightable and therefore is in the public domain, that is a challenge to my likelihood of success on the merits, not the balance of equities. And finally, there is a clear public policy interest in the instant case. Not only is there a clear public policy interest in enforcing copyright, but the defendants in this case have acted with motives that are wholly intolerable by a court of law, whether that be pure malice for its own sake, or taking the law into their own hands. Both are equally disdained by public policy. Therefore, public policy favors the granting of this TRO.

27. Wherefore, premises considered, I respectfully request that the Court order Youtube LLC to disable access to the infringements which form the basis of Infringements #25, #26, #27, #29, #30, #31, #32, and #33 in the Second Amended Complaint, and that Youtube be ordered to preserve the analytics of each infringement, so that this information may be obtained during discovery.

So requested on this, the 27th Day of April, 2022.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge Ave.,
APT D
Harrison, AR 72601
(870) 212-4947
acerthorn@yahoo.com
