UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS,<br><br>    Plaintiff,<br><br>v.<br><br>EMILY REBOLO, et al.,<br><br>    Defendants. | Case No. 22-cv-00546-JSW<br><br>**ORDER LIFTING STAY, SCREENING SECOND AMENDED COMPLAINT, AND DISMISSING CASE IN PART**<br><br>Re: Dkt. Nos. 32, 34, 35 |

On April 23, 2023, the Court issued an order staying this case pending resolution of the appeal in *Stebbins v. Polano*, 4:21-cv-4184-JSW (the "Related Case"). (*See* Dkt. No. 33.) On August 28, 2024, the Ninth Circuit issued an order affirming dismissal of the Related Case. (Dkt. No. 35.) Now that the Related Case is resolved, the Court HEREBY LIFTS THE STAY.

With the stay lifted, and because Plaintiff David A. Stebbins ("Plaintiff") seeks to proceed *in forma pauperis*, the Court screens Plaintiff's Second Amended Complaint ("SAC") under 28 U.S.C. section 1915. (*See* Dkt. Nos. 8, 20.)

**BACKGROUND**

**A.     Procedural History.**

The Court previously dismissed Plaintiff's First Amended Complaint ("FAC") for failure to state a claim with prejudice. (Dkt. No. 20.) In the order of dismissal, the Court held that claims based on Plaintiff's April 10, 2021 livestream failed for lack of creativity and human authorship. (*Id.* at 2:23-28.) The Court similarly found that the 2D images lacked sufficient "creativity in the arrangement and selection of the hexagons to qualify for copyright protection," and thus dismissed those claims as well. (*Id.* at 3:12-14.) Finally, the Court determined that Plaintiff failed to allege ownership of the additional livestreams, failed to show creativity, and offered only vague and

conclusory allegations of copying.  (*Id.* at 4:5-10.)

Plaintiff moved to reconsider, and the Court granted the motion, in part.  (Dkt. No. 30.) The Court permitted Plaintiff an additional opportunity to cure the defects in his pleading given the latitude appropriate for *pro se* litigants.  (*Id.*)  The Court granted leave amend only his infringement claims based on the 2D images and his claims based on alleged copying of livestream videos other than the April 10, 2021 video.  (*Id.* at 3:21-25.)  The Court did not grant Plaintiff leave to add new claims or new defendants.  (*Id.* at 3:25-26.)

**B.    Allegations in the SAC.**

Plaintiff is "a Youtube channel owner and a Twitch streamer who operates under the pseudonym 'Acerthorn.' "  (Dkt. No. 32, SAC, ¶ 1.)

Plaintiff contends that Defendants Emily Rebolo, Trystan Burge, Karl Polano, Alphabet Inc., Youtube LLC, Discord Inc., Twitch Interactive Inc., and five individual John Does going by "Creetosis," "Viroza," "Sidalpha," "Bibi Faizi," and "Rogue, Internet Man" infringed his copyrightable works in violation of federal law.

Plaintiff's allegedly copyrightable works include five videos and ten 2D images:

(1) An October 13, 2019 video critiquing the Bethesda Softworks game "Fallout: New Vegas Retrospective."  (*Id.* ¶ 34.)  Plaintiff registered the video with the United States Copyright Office ("USCO") more than three months after publication.  (*Id.* ¶ 38.)

(2) An April 10, 2021 livestream where Plaintiff accidentally filmed himself in his apartment for 1 hour and 43 minutes.  (*Id.* ¶ 19.)  Plaintiff registered this video with the USCO and uploaded it to his Youtube channel, restricting access to only paying viewers.  (*Id.* ¶ 24.)

(3) An April 18, 2021 Twitch livestream video co-authored with Defendant Polano.  (*Id.* ¶ 25.)  Plaintiff "do[es] not wish" to share the video with the Court, but he alleges that the video "has minimal creativity because [he] repeatedly cracked jokes, made wisecracks, and displayed [his] personality and charisma for the audience's entertainment."  (*Id.* ¶ 27.)

(4) A November 24, 2021 YouTube video announcing the end of a "Corrections" series on

1   Plaintiff's Youtube account. (*Id.* ¶ 30.) The video, which is less than a minute long,
2   cuts together a number of short videos of angry people and posts or comments from
3   Plaintiff's Youtube channel. (*Id.* ¶ 31.)

4   (5) A December 18, 2021 livestream debate between Acerthorn and guest "Skibbidy
5   Dibbity" regarding "Fallout: New Vegas," posted on Plaintiff's Youtube channel. (*Id.*
6   ¶ 39.) Plaintiff contends that his opinions, word choices, and inflection are creative.
7   (*Id.* ¶ 42.)

8   (6) Ten 2D images "comprised predominately of a blue honeycomb background with text
9   overlaying it." (*Id.* ¶ 46.) The honeycomb is comprised of hexagons which are spaced
10  out, with a blue gradient between "Polynesian" and "periwinkle" filling the space
11  between the hexagons. (*Id.*) Plaintiff applied a "fish-eye filter" to one of the 2D
12  images, the "Acerthorn Channel Icon." (*Id.* ¶ 48.) The USCO refused to register the
13  2D designs for lack of sufficient creativity. (*Id.* ¶ 50.)

Plaintiff further alleges that Defendants issued fraudulent takedown notices to attempt to block access to Plaintiff's YouTube channel, and that YouTube, Twitch, and Discord failed to comply with requirements to protect Plaintiff's works.

Finally, Plaintiff contends that Shira Perlmutter, the Register of Copyrights with the USCO, wrongfully withheld copyright registrations for certain of Plaintiff's works which he contends contain minimum creativity. (*Id.* ¶ 52.)

## ANALYSIS

**A.     Applicable Legal Standards.**

Section 1915(e)(2)(B) provides that the Court "shall" dismiss the case if it determines that "the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). This section parallels the language of Federal Rule of Civil Procedure 12(b)(6) regarding dismissal for failure to state a claim, and thus courts apply a parallel standard when screening complaints. *See Lopez v. Smith*, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (discussing meaning of "fails to state a claim" under Section 1915(e)(2)(B)(ii)). The complaint

3

1    therefore must allege facts that plausibly establish each defendant's liability. *Bell Atl. Corp. v.*
2    *Twombly*, 550 U.S. 544, 555-57 (2007).

**B.     Plaintiff Fails to State a Claim for Copyright Infringement for Most of His Works.**

"To establish to establish infringement of a copyright, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv., Co.*, 499 U.S. 340, 361 (1991). To be copyrightable, the work must "possess[] at least some minimal degree of creativity." *Id.* at 345. Registration of a copyright with the USCO is a prerequisite for a civil action for infringement. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 595 U.S. 178, 181 (2022).

Registration typically constitutes "prima facie evidence of the validity of the copyright," but the presumption of validity may be rebutted by "some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement." *United Fabrics Intern., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011) (quoting 17 U.S.C. § 410(c) and *Lamps Plus, Inc. v. Seattle Lighting Fixture Co.*, 345 F.3d 1140, 1144 (9th Cir. 2003)). Here, the Court previously determined that Plaintiff is not entitled to the presumption of validity for his copyrighted works because he did not disclose the true nature and circumstances of the April 10, 2021 livestream to the USCO. (*See* Dkt. No. 20, at 3:24-4:4; Related Case, Dkt. No. 158, at 6:21-7:10.)

**1.     The April 10, 2021 Livestream Is Not Protectable.**

Plaintiff concedes that the Court did not grant leave to amend his claims regarding the April 10, 2021 livestream, but he nevertheless includes allegations relating to the livestream to preserve the issue. (*See* SAC at 5 n.1.) For the avoidance of doubt, the Court dismisses the claims relating to this livestream for the reasons set forth in Dkt. No. 20, at 2.

**2.     Plaintiff Fails to Allege the 2D Images Merit Copyright Protection.**

Plaintiff's allegations regarding the 2D images are nearly identical between the FAC and SAC. (*See* Dkt. No. 15, FAC, ¶¶ 33-39; SAC ¶¶ 44-52.) Plaintiff adds two new allegations to attempt to demonstrate creative spark: (1) his "choices of the various shades of blue, as well as [his] choice to have the hexagons all be separated from one another, are all creative choices that [he] made"; and (2) an attorney told Plaintiff that his artwork contains minimal creativity. (SAC

4

¶¶ 49, 51.) Neither of these additions cure the defects noted in the Court's order dismissing the FAC because they are legal conclusions or opinions. The factual allegations regarding the 2D images remain unchanged: Plaintiff made a pattern of recurring hexagons, spaced slightly apart, with blue gradient in between.

As the USCO found, copyright protection is unavailable for basic geometric shapes, and the particular arrangement of Plaintiff's shapes does not merit protection. *See Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003) (holding "that a combination of unprotectable elements is eligible for copyright protection only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship."). The 2D images lack sufficient creativity, and they are not protected by copyright law.

Because the 2D images do not warrant protection, injunctive relief against Defendant Perlmutter is unavailable. The claims against Perlmutter are dismissed, with prejudice.

### 3. Plaintiff Fails to Allege the April 18, 2021 Livestream Merits Protection.

Plaintiff contends that this livestream merits copyright protection because he "repeatedly cracked jokes, made wisecracks, and displayed [his] personality and charisma for the audience's entertainment." (SAC ¶ 27.) Plaintiff does not provide any other information regarding the content of this livestream, but he links to other videos that purportedly demonstrate "the kind of jokes, wisecracks, and personality that was on display in this stream." (*Id.*) These allegations do not provide any well-pleaded facts to support an inference of creativity or originality in the April 18, 2021 livestream, which is a wholly different recording. Accordingly, the April 18, 2021 livestream does not merit copyright protection.

### 4. Defendant Burge's Copying of the November 24, 2021 Video Was Fair Use.

Plaintiff contends that Burge infringed the November 24, 2021 video, "Corrections Series is [sic] Canceled, and Here's Why" by reproducing a "portion" of the video in a subsequent critique. (SAC ¶ 167.) Burge's video, "The problems with Acerthorn," allegedly "used the 'heart' " of Acerthorn's November 24, 2021 work when "discussing [Burge's] frustrations with [Plaintiff]." (*Id.* ¶¶ 166-67.) Plaintiff acknowledges that criticism may be protected by fair use

5

1  but argues that Burge is not shielded here.

2  "Fair use" of a copyrighted work "for purposes such as criticism. . . is not an infringement of copyright." 17 U.S.C. § 107.  Four factors guide the fair use inquiry: (1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.*  Courts "do not consider these factors in isolation, but weigh them together, in light of the copyright law's purpose 'to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works.' "  *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 529 (9th Cir. 2008) (quoting *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799-800 (9th Cir. 2003)).

The first factor weighs strongly in favor of fair use.  Burge plainly used Plaintiff's content for criticism purposes.  Burge titled his video, "The problems with Acerthorn," and he used a portion of Plaintiff's November 24, 2021 video to illustrate his problems with Plaintiff's corrections videos.  Plaintiff admits, albeit with qualifications, that Burge criticizes the video he copied.  (SAC ¶ 167.)  This critical purpose reduces the relevance of the commercial versus informational inquiry.  *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579, 114 S. Ct. 1164, 1171, 127 L. Ed. 2d 500 (1994) (noting "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use").

The second factor also weighs in favor of fair use.  Plaintiff admits that the video does not have "much creativity" due to its short length.  (*See* SAC ¶¶ 31, 32, 239.)  Plaintiff argues that the video nevertheless is creative due to his video editing and pronouncing words in a "snarky tone." (*Id.* ¶ 31.)  The primary purpose of this work, however, is informational, not expressive.  The video serves to explain "why" Plaintiff discontinued his "Corrections" series of YouTube videos. Works that are informational in nature merit thin copyright protection.  *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) (holding "Works that are creative in nature are closer to

6

1  the core of intended copyright protection than are more fact-based works") (quoting *A&M Recs.,*
2  *Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001)).

3  Plaintiff's chief complaint with Burge's video appears to relate to the third fair use factor,
4  the amount and substantiality of the portion used.  Plaintiff asserts that Burge could have critiqued
5  Plaintiff's works without using any portions of Plaintiff's video.  Plaintiff analogizes to *Monge v.*
6  *Maya Magazines, Inc.*, 688 F.3d 1164 (9th Cir. 2012).  In that case, a celebrity couple married in
7  secret and took photos of the wedding and wedding night for their personal use.  *Id.* at 1169.  A
8  gossip magazine obtained and published six of the photos with minimal or no alterations.  *Id.* at
9  1170, 1176.  In finding that the publication did not constitute "fair use," the Ninth Circuit
10 observed that the magazine "used far more than was necessary to corroborate its story" by
11 publishing almost all of the wedding-related images to show that the couple was in fact married.
12 *Id.* at 1179.  Unprotected works, or fewer images, would have conveyed the same message.  *Id.*

13 In this case, Plaintiff alleges that Burge criticizes the "specific video" which he allegedly
14 infringed.  (*See* SAC ¶ 167.)  Unlike in *Monge*, there is no substitute for the allegedly protectable
15 content to convey the same message.  *See Monge*, 688 F.3d at 1179 (suggesting magazine could
16 have used marriage certificate or one photo instead of nearly all photos).  Plaintiff's allegations
17 further differ from the facts in *Monge* because Burge used only a "portion" of the November 24
18 work, whereas in *Monge* the magazine reproduced all or nearly all of the wedding photos in their
19 entirety.  *See id.*; (SAC ¶ 167.)  *Monge* does not assist Plaintiff.  The Court accordingly finds that
20 the third factor only slightly favors Plaintiff or is neutral.

21 The fourth factor, the effect of the use upon the potential market for or value of the
22 copyrighted work, weighs in favor of fair use due to the critical nature of Burge's video.  Although
23 Plaintiff offers the legal conclusion that Burge's video could serve as a "market replacement" for
24 Plaintiff's own, (SAC ¶ 167), Plaintiff's allegations regarding the nature of Burge's work make
25 clear that Burge's video is highly transformative and does not replace Plaintiff's.  *See Kelly*, 336
26 F.3d at 821 (holding "[a] transformative work is less likely to have an adverse impact on the
27 market of the original than a work that merely supersedes the copyrighted work.")

28 The fair use by Burge of Plaintiff's November 24, 2021 work is apparent from the face of

the SAC. The Court thus dismisses this claim with prejudice.

### 5. The SAC Fails to Allege Infringement of the December 18, 2021 Livestream.

Plaintiff contends Defendant Rebolo infringed the December 18, 2021 livestream by distributing a recording thereof. (SAC ¶ 149.) Plaintiff also argues that Rebolo improperly used a "clip" from the December 18, 2021 livestream in a video on Rebolo's Youtube channel on January 17, 2021.[1] (*Id.* ¶ 150.)

#### a. The SAC Does Not Satisfy Rule 8 with Regard to Sharing Allegations.

Plaintiff alleges that Rebolo downloaded or recorded the December 18, 2021 livestream and "proceeded to share this copy across various websites such as Discord." (*Id.* ¶ 149.) Plaintiff provides no information regarding the timing of this alleged infringement; the alleged recipients; or whether Rebolo distributed a portion or the entirety of the video, which is more than seven hours long. Plaintiff speculates that Rebolo shared the video beyond houseguests in her home. (*Id.*) This allegation is pure speculation, implausible, and does not contain enough information to put Rebolo on notice of the nature of the claims against her. Because this is Plaintiff's third attempt to plead, the Court dismisses this claim with prejudice.

#### b. Rebolo's Use of the Clip in a Subsequent Video Is Fair Use.

The Court dismisses claims of infringement relating to Rebolo's use of a clip of the December 18, 2021 livestream for failure to state a claim. Rebolo's copying is protected by the fair use doctrine.

Much like Burge, Rebolo used a snippet of Plaintiff's work for the purpose of criticizing Plaintiff. Criticism is inherently transformative, and thus the first fair use factor weighs heavily in Rebolo's favor. Moreover, Plaintiff does not allege that Rebolo's use was commercial in nature.

The second fair use factor, nature of the copyrighted content, also weighs in Rebolo's favor. Plaintiff alleges that in the infringed portion of his video Plaintiff "explain[s] that [Plaintiff] was giving preferential treatment to [his] monetary supporters over those who are watching [his] videos for free." (*Id.*) This is not creative content; it is purely informational. *See*

---

[1] The Court assumes this out-of-sequence date is a typographical error.

*SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1279 (9th Cir. 2013) (finding a "clip [that] conveys mainly factual information" to be farther from "the core of intended copyright protection") (quoting *Campbell*, 510 U.S. at 586).

The third fair use factor, amount and substantiality of the portion used, also favors Rebolo. Plaintiff alleges Rebolo infringes a video over seven hours in length by using a "clip" thereof. (*See* SAC ¶¶ 42, 150.) The clip used appears to be a brief aside wherein Plaintiff states he favors his paying subscribers, while Plaintiff's purpose in creating the video was to debate the merits of Fallout: New Vegas with Skibbidy Dibbity. (*Id.* ¶ 42.) One brief, off-topic remark in a seven-plus hours long video is insubstantial.

The fourth and final fair use factor, effect upon the original's market or value, likewise weighs in Rebolo's favor. One clip is not a market replacement for a debate, and the clip does not focus on the debate topic. All four factors weigh in Rebolo's favor, and the Court finds that she is not liable for using the clip.

Because Rebolo's use is protected, YouTube is protected by the DMCA's safe harbor for its decision to reinstate Rebolo's video.

**C.      Plaintiff Adequately Alleges Creetosis Infringed the October 13, 2019 Video.**

Although it is a close call, the Court finds that Plaintiff adequately alleges ownership of the October 13, 2019 work. Plaintiff admits that he uses art and video that belong to Bethesda Softworks, but he argues that his copying was transformative due to his edits and commentary. (SAC ¶ 34.)

Plaintiff contends Creetosis infringed the October 13, 2019 video by livestreaming himself watching Plaintiff's video and reacting to it. (*Id.* ¶ 171.) Creetosis paused Plaintiff's video to give commentary, meaning that the entirety of Plaintiff's work was replicated without modification and could serve as a market substitute. (*Id.* ¶ 184.) Plaintiff sufficiently alleges that Creetosis unlawfully copied Plaintiff's work.[2]

Plaintiff alleges YouTube declined to take down Creetosis' videos following DMCA

---

[2] The Court does not hold that Creetosis's work is not protected by the fair use defense, but merely that the defense is not obvious from the face of the SAC.

takedown notices from Plaintiff. (*Id.* ¶ 172.) Plaintiff thus adequately alleges that YouTube lost its safe harbor with regard to Creetosis's video.

The Court will permit this claim to proceed.

### D.   Plaintiff States a Claim for DMCA Misrepresentation.

The Digital Millenium Copyright Act of 1998 ("DMCA") provides a mechanism for copyright owners to enforce their rights online. 17 U.S.C. § 512. A copyright holder may issue a "takedown notice" requiring an online service provider to remove infringing content. *Id.* § 512(c)(1)(C). The copyright holder must include, among other things, "[a] statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized" and "that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed." *Id.* § 512(c)(3)(A)(v)-(vi). Upon receipt of a takedown notice, online service providers are shielded from copyright liability if they "expeditiously" remove or disable access to the allegedly infringing material. *Id.* § 512(c)(1)(C).

The DMCA curtails potential abuse of the takedown system by providing for "counter notifications" and liability for false takedowns. *Id.* § 512(g)(3). A subscriber who believes its content was improperly removed following a DMCA takedown notice may respond with "[a] statement under penalty of perjury that the subscriber has a good faith belief that the material was removed or disabled as a result of mistake or misidentification." *Id.* § 512(g)(3)(C). The online service provider must then "replace the removed material or cease disabling access to it" within ten to fourteen business days. *Id.* § 512(g)(2)(C). Further, any person who "knowingly" and "materially misrepresents" information in either a takedown notice or a counter notice "shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer. . . as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material." 17 U.S.C. § 512(f). "Any damages" includes nominal damages. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1156 (9th Cir. 2016). A plaintiff pursuing a DMCA misrepresentation claim must demonstrate "some actual knowledge of misrepresentation" by the defendant. *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004).

10

Here, Plaintiff alleges that Bibi Faizi knowingly submitted fraudulent takedown notices for ten of Plaintiff's videos one day after SidAlpha published a video attacking Plaintiff. (SAC ¶¶ 231, 234.) The content of the videos was owned by Plaintiff, in the public domain, or owned by known third parties such that Bibi Faizi could not have mistakenly believed that the videos infringed his protected material. (*Id.* ¶ 234.) Plaintiff successfully submitted counter notifications, but the videos were unavailable and Plaintiff's channel was locked for seventeen days. (*Id.* ¶ 286.)

### E. Admonition Regarding Civility.

In permitting certain of Plaintiff's claims to progress, the Court cautions that it does not condone Plaintiff's schoolyard taunts or his blatant hostility to the Court or the Defendants. (*See, e.g.*, SAC ¶ 181 (referring to Creetosis as "His Majesty"); *id.* ¶ 271 (describing Defendants as "extremely narrow-minded, extremely self-entitled").) Should Plaintiff continue to use derogatory or abusive language, the Court will dismiss the action with prejudice.

### CONCLUSION

For the foregoing reasons, the Court dismisses the action in part, as follows:

1. The claims against Emily Rebolo, Shira Perlmutter, Tristan Burge, John Doe #2 d/b/a "Viroza," John Doe #3 d/b/a "SidAlpha," John Doe #5 d/b/a "Rogue, Internet Man," Twitch Interactive Inc., and Discord Inc. are dismissed in their entirety, with prejudice;

2. Plaintiff's claim against John Doe #1 d/b/a "Creetosis" and YouTube for infringing Plaintiff's October 13, 2019 video may proceed;

3. Plaintiff's claim against Bibi Faizi for DMCA misrepresentation may proceed;

4. Further lack of civility will result in dismissal of the action in its entirety, with prejudice; and

//

11

5.        Plaintiff may file a further amended complaint regarding only his remaining claims within twenty-one (21) days of this Order. Plaintiff may not add or revive claims or defendants without leave of Court.

**IT IS SO ORDERED.**

Dated: December 4, 2024

_____
JEFFREY S. WHITE
United States District Judge