1    LAURA HERNANDEZ, State Bar No. 344641
     WILSON SONSINI GOODRICH & ROSATI
2    Professional Corporation
     One Market Plaza, Spear Tower, Suite 3300
3    San Francisco, CA 94105-1126
     Telephone: (415) 947-2000
4    Facsimile: (866) 974-7329
     Email: lhernandez@wsgr.com
5
     JEREMY P. AUSTER (*admitted pro hac vice*)
6    WILSON SONSINI GOODRICH & ROSATI
     Professional Corporation
7    1301 Avenue of the Americas, 40th Floor
     New York, NY 10019-6022
8    Telephone: (212) 999-5800
     Facsimile: (866) 974-7329
9    Email: jauster@wsgr.com

10   *Counsel for Defendant YouTube, LLC*

11                  **UNITED STATES DISTRICT COURT**

12                 **NORTHERN DISTRICT OF CALIFORNIA**

13   DAVID A. STEBBINS,                     )  Case No.: 4:22-cv-00546-JSW
                                            )
14            Plaintiff,                    )  **DEFENDANT YOUTUBE, LLC'S**
                                            )  **NOTICE OF MOTION AND MOTION**
15        v.                                )  **TO DISMISS**
                                            )
16   ALPHABET INC. et al.,                  )  Judge: Jeffrey S. White
                                            )  Date: April 25, 2025
17            Defendants.                   )  Time: 9:00 a.m.
                                            )
18                                          )  Action Filed: January 27, 2022
                                            )
19   _____ )

20

21

22

23

24

25

26

27

28

1    **TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS:**

2    **PLEASE TAKE NOTICE** that on April 25, 2025 at 9:00 a.m., or as soon thereafter as the

3    matter may be heard, in the United States District Court, Northern District of California, Oakland

4    Courthouse, Courtroom 5, 2nd Floor, located at 1301 Clay Street, Oakland, California 94612,

5    before the Honorable Jeffrey S. White, Defendant YouTube, LLC ("YouTube") will and hereby

6    moves the Court to dismiss Plaintiff David A. Stebbins' sole remaining copyright infringement

7    claim against YouTube with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). This

8    Motion is based on this Notice of Motion, the concurrently filed Memorandum of Points and

9    Authorities, the concurrently filed Request for Judicial Notice and Consideration of Materials

10   Incorporated by Reference ("RJN"), the Declarations of Aamir Hasnat and Jeremy P. Auster, Esq.

11   and accompanying exhibits, the pleadings and records on file in this action, all other matters of

12   which this Court may take judicial notice, and such other argument as may be heard by the Court.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ....................................................................................................... 2

I.      This Court Previously Dismissed All But One of Stebbins' Copyright Claims ................ 2

II.     Stebbins' Remaining Copyright Infringement Claim Targets Fair Use Criticism ............. 3

ARGUMENT ........................................................................................................... 6

I.      Creetosis' Livestreams Are A Fair Use of Stebbins' Video ............................................... 6

        A.      Factor 1: Creetosis' Livestreams Are Highly Transformative ................................ 7

        B.      Factor 2: Stebbins' Video Is Far from the Core of Copyright ............................. 10

        C.      Factor 3: Creetosis' Use Was Reasonable in Relation to the Purpose .................. 11

        D.      Factor 4: Creetosis' Livestreams Do Not Affect Any Market for the Video ........ 12

II.     Stebbins' Infringement Claim is Defeated By the License He Granted YouTube ........... 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Andy Warhol v. Goldsmith*,
    598 U.S. 508 (2023) ......................................................................................... 7, 9

*Beijing Zhongyi Zhongbiao Elec. Info. Tech. Co. Ltd. v. Microsoft Corp.*,
    2013 WL 6979555 (W.D. Wash. Oct. 31, 2013), *aff'd*, 655 F. App'x 564
    (9th Cir. 2016) ..................................................................................................... 15

*Brunson v. Cook*,
    2023 WL 2668498 (M.D. Tenn. Mar. 28, 2023)................................................ 11

*Bus. Casual Holdings, LLC v. YouTube, LLC*,
    2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) ............................................... 14, 15

*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994) ................................................................................. 7, 11, 12

*City of Inglewood v. Teixeira*,
    2015 WL 5025839 (C.D. Cal. Aug. 20, 2015) .................................... 9, 10, 14

*DraftExpress, Inc. v. Whistle Sports, Inc.*,
    2022 WL 16962285 (C.D. Cal. Aug. 2, 2022) .................................................. 10

*Field v. Google Inc.*,
    412 F. Supp. 2d 1106 (D. Nev. 2006) ............................................................... 11

*Fisher v. Dees*,
    794 F.2d 432 (9th Cir. 1986)....................................................................... 12, 13

*Gallo v. Simon & Schuster, Inc.*,
    2014 WL 12599784 (C.D. Cal. July 9, 2014) .................................................. 14

*Google LLC v. Oracle Am., Inc.*,
    593 U.S. 1 (2021) ......................................................................................... 6, 12

*Hosseinzadeh v. Klein*,
    276 F. Supp. 3d 34 (S.D.N.Y. 2017) ................................................. 9, 12, 13, 14

*Hughes v. Benjamin*,
    437 F. Supp. 3d 382 (S.D.N.Y. 2020) ........................................... 6, 9, 12, 13

*Hustler Magazine Inc. v. Moral Majority Inc.*,
    796 F.2d 1148 (9th Cir. 1986)...................................................................... 7, 10

*Kelly v. Arriba Soft Corp.*,
    336 F.3d 811 (9th Cir. 2003)............................................................................. 11

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008)............................................................................... 6

*Mattel Inc. v. Walking Mt. Prods.*,
    353 F.3d 792 (9th Cir. 2003) ............................................................................ 7, 10, 11

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
    629 F.3d 928 (9th Cir. 2010) .................................................................................... 6

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .................................................................................. 6

*Moses v. Fedida*,
    2018 WL 7501122 (C.D. Cal. Dec. 12, 2018) ........................................................ 15

*Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*,
    868 F. Supp. 2d 962 (C.D. Cal. 2012) ................................................................... 12

*Richardson v. CBS Studios Inc.*,
    2013 WL 12120265 (C.D. Cal. Sept. 25, 2013) .................................................... 15

*Santos v. Kimmel*,
    --- F. Supp. 3d ----, 2024 WL 3862149 (S.D.N.Y. Aug. 19, 2024) ...................... 6, 9, 10

*Savage v. Council on American-Islamic Relations, Inc.*,
    2008 WL 2951281 (N.D. Cal. Jul. 25, 2008) ................................................ *passim*

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
    2009 WL 2157573 (N.D. Cal. July 16, 2009) ......................................................... 7

*Seltzer v. Green Day, Inc.*,
    725 F.3d 1170 (9th Cir. 2013) ................................................................................ 11

*SOFA Ent., Inc. v. Dodger Prods., Inc.*,
    709 F.3d 1273 (9th Cir. 2013) ........................................................................ 10, 12

*Sony Comput. Ent't Am., Inc. v. Bleem, LLC*,
    214 F.3d 1022 (9th Cir. 2000) .................................................................................. 7

*Spinelli v. Nat'l Football League*,
    96 F. Supp. 3d 81 (S.D.N.Y. 2015) ....................................................................... 15

*Stebbins v. Google LLC*,
    2023 WL 6139454 (N.D. Cal. Aug. 31, 2023), *appeal filed*
    No. 24-1936 (9th Cir. April 1, 2024) .......................................................... 1, 2, 6, 10, 11

*Stebbins v. Stebbins*,
    2013 WL 6182991 (W.D. Ark. Nov. 26, 2013) ....................................................... 2

*Sun Microsystems, Inc. v. Microsoft Corp.*,
    188 F.3d 1115 (9th Cir. 1999) ................................................................................ 14

## STATUTES

17 U.S.C. § 101 ........................................................................................................... 11

17 U.S.C. § 107 ..................................................................................................... *passim*

**RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................ 6

**MISCELLANEOUS**

*Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) § 1906.1 .................... 11

### INTRODUCTION

Plaintiff David Stebbins is a serial abuser of the court system. In 2023, a sister court in this district became the second court to declare Stebbins a "vexatious litigant" as a sanction for his pattern of filing frivolous copyright claims in the Northern District "against his critics." *Stebbins v. Google LLC*, 2023 WL 6139454, at *10 (N.D. Cal. Aug. 31, 2023), *appeal filed* No. 24-1936 (9th Cir. April 1, 2024). This case is no different.

Through an IFP Screening Order, this Court already dismissed all but one of Stebbins' copyright claims in this action. *See* Dkt. 36 ("Screening Order") at 4-9. The sole remaining infringement claim should fare no better. In his operative Second Amended Complaint (Dkt. 32, "SAC"), Stebbins alleges that he posted a video to YouTube that copies extensive footage from the *Fallout* video game and includes his voice-over review of the game. According to Stebbins, defendant "Creetosis," a third-party YouTube user, infringed Stebbins' copyright in the video by copying portions of it in two separate "livestreams" that Creetosis recorded on YouTube and uploaded to their channel. Stebbins seeks to hold YouTube liable for those alleged infringements.

Stebbins' infringement claim should be dismissed with prejudice because the livestream videos—which are now properly before the Court—are quintessential non-infringing fair uses under the four-factor test set forth in Section 107 of the Copyright Act. **First**, both livestreams are highly transformative because they provide extensive commentary and criticism of Stebbins' video. The livestreams generally play portions of Stebbins' video for mere seconds before pausing playback of the video so that Creetosis and the other participants can engage in extensive back-and-forth commentary in response to Stebbins' opinions about the *Fallout* game. This painstaking pattern of alternating playback and commentary repeats for over fourteen-and-a-half hours across the two livestreams, with the segments of paused commentary accounting for roughly **thirteen hours (or 90%)** of that runtime. In Stebbins' prior complaint (Dkt. 15), he averred that the livestreams provide "ample" criticism of his video and are "highly transformative." That should now be beyond dispute. But after the Court dismissed his claim and gave him a "final opportunity to amend," Stebbins has decided to directly contradict his prior allegations of transformativeness. Regardless, the Court can now see for itself that the livestreams are manifestly transformative, as

Stebbins originally claimed. **Second**, Stebbins' video, composed largely of footage he did not create and his voice-over opinions, is of minimal creativity, and he published it on YouTube for the world to view free of charge. **Third**, both livestreams copy only portions of Stebbins' video as part of much longer new works, and to further a highly transformative purpose. And **fourth**, the livestreams cannot plausibly usurp any market for Stebbins' video, even accepting the notion that there is one, because they provide an entirely different viewer experience than Stebbins' original. As a matter of law, the livestreams are quintessential fair uses and the claim against YouTube fails.

Stebbins' claim also founders in light of a license he granted YouTube under his Terms of Service agreement with the company, which gives YouTube expansive rights to use his video content, including to "reproduce, distribute, prepare derivative works, display and perform" it on YouTube. That license covers YouTube's alleged act of infringement and bars Stebbins' claim.

Both of YouTube's defenses are readily apparent from the face of the SAC and matters judicially noticeable. The Court should thus dismiss Stebbins' latest vexatious infringement claim.

## **BACKGROUND**

### I.    THIS COURT PREVIOUSLY DISMISSED ALL BUT ONE OF STEBBINS' COPYRIGHT CLAIMS

Stebbins uses the alias "Acerthorn." SAC ¶ 1. He operates a YouTube channel where he uploads videos showing footage of video games, with Stebbins providing voice-over review. *Id.* (linking to channel, https://www.youtube.com/acerthorn). He is also a serial *pro se* plaintiff. In 2013, he was declared "vexatious" in his home district. *Stebbins v. Stebbins*, 2013 WL 6182991, at *1 (W.D. Ark. Nov. 26, 2013). In August 2023, Judge Trina L. Thompson declared him "a vexatious litigant" in this District. *Stebbins v. Google*, 2023 WL 6139454, at *8-10.

Stebbins commenced this action in January 2022. *See* Dkt. 1. He amended his complaint in March 2022, adding the infringement claim against YouTube that is the subject of this motion. *See* Dkt. 15 ("FAC") ¶¶ 29-30, 85-92, 166-168. In July 2022, this Court dismissed the FAC with prejudice. Dkt. 20 at 4. Stebbins moved to vacate that judgment (Dkt. 23), and the Court granted that motion in part, allowing him "a final opportunity to amend" certain claims. Dkt. 30 at 3.

On April 22, 2023, Stebbins filed his SAC. Dkt. 32. On December 4, 2024, this Court dismissed the SAC in large part, finding that most of Stebbins' copyright claims were based on unprotectable works or targeted fair use criticism. Screening Order at 4-9. However, the Court allowed one copyright infringement claim against "Creetosis" to proceed based on two allegedly infringing YouTube videos, as well as a vicarious infringement claim against YouTube for those videos. *Id.* at 9-11. The Court also allowed Stebbins' DMCA claim against defendant "Bibi Faizi" to proceed. *Id.* at 11. All other claims and defendants were dismissed with prejudice.[1] *Id.*

## II.    STEBBINS' REMAINING COPYRIGHT INFRINGEMENT CLAIM TARGETS FAIR USE CRITICISM

Stebbins alleges that on October 13, 2019, he posted an approximately hour-and-a-half long video to his YouTube channel titled "Fallout: New Vegas Retrospective," which is available at the following URL:   https://www.youtube.com/watch?v=T6Xp-Audx3w (the "Video"). SAC ¶ 34; YouTube's Request for Judicial Notice ("RJN") at 1. Under YouTube's Terms of Service, which Stebbins agreed to when creating his channel, he granted YouTube a broad license to "use" the Video he posted to the service, including rights to "reproduce, distribute, prepare derivative works, display and perform it." *See* Declaration of Jeremy Auster in Support of YouTube's RJN ("Auster Decl.") Ex. 6 ("TOS") at 8 ("License to YouTube").

Stebbins admits that his Video consists almost exclusively of "extensive … in-game clips" from the *Fallout* game, but "believe[s]" the Video "falls under fair use" because he uses the footage to "review and critique" and offer his "creative" "opinions" about the game. SAC ¶¶ 34, 36. Stebbins registered the Video as a "Motion Picture" with the Copyright Office. *Id.* ¶ 38; Auster Decl., Ex. 7.

According to Stebbins, on September 12 and 15, 2021, another "Youtuber" who operates a channel under the alias "Creetosis" "performed two livestreams" on YouTube "where he and some friends" played "literally every second of" Stebbins' Video, *id.* ¶¶ 4, 171, "albeit across [the] two streams on two different sittings," FAC ¶ 88. These two livestream videos were later uploaded

---

[1] Although YouTube's parent, Alphabet Inc., is referenced twice in the SAC (¶¶ 10, 14), there are no allegations against Alphabet. The Screening Order only allowed "Plaintiff's claim against …. YouTube" to proceed (at 11), not claims against Alphabet, and Alphabet has never been served.

to Creetosis' channel and were formerly available at https://youtu.be/gagv7c-CD-U ("Livestream #1") and https://youtu.be/iZMk6tzXpm4 ("Livestream #2," together, the "Livestreams"), but they were removed on September 7, 2023. SAC ¶ 171; Declaration of Aamir Hasnat in Support of YouTube's Motion ("Hasnat Decl.") ¶¶ 3-4. Copies of Livestreams #1 and #2 are attached as Exhibits A and B to the Hasnat Decl., respectively.

Livestream #1 is roughly eight hours long. *See* Hasnat Decl. Decl., Ex. A. The first 4.5 hours do not include playback of Stebbins' Video. In that portion, Creetosis primarily plays and discusses a *different* one of Stebbins' videos, which is not at issue. *See* SAC ¶ 171. Stebbins' Video is first shown over four hours into Livestream #1, but Creetosis only begins playing the Video just after the 4.5 hour mark. *See* Hasnat Decl., Ex. A at 04:13:27, 04:34:48.[2] Creetosis proceeds to play segments comprising the first thirty-one minutes of the Video—the only portion included in Livestream #1—across the final 3.5 hours of the livestream,[3] "frequently paus[ing]" after each segment of the Video to evaluate Stebbins' opinions with his fellow commentators and offer their "statements," "opinions," "commentary," and "criticism" in response. SAC ¶¶ 174-75, 177, 184.

Livestream #2, which is roughly eleven-and-a-half hours, includes only the final hour of Stebbins' Video. *See* Hasnat Decl., Ex. B. Creetosis begins playing the Video approximately 22 minutes into Livestream #2 (*id.* at 00:22:37), and plays the remaining hour of the Video in exceptionally brief segments—often seconds long—across the final eleven hours of the livestream, again "frequently paus[ing]" for commentary and criticism. SAC ¶¶ 174-75, 177, 184.

In his FAC, Stebbins averred the following about the Livestreams: "I will freely admit this much: There is ample criticism and commentary about my [Video]. Yes, I will freely admit that." FAC ¶ 86. He also conceded that each Livestream is "highly transformative." *Id.* ¶ 92. After this Court dismissed Stebbins' FAC and gave him "a final opportunity to amend" (Dkt. 30 at 3), Stebbins dropped and directly contradicted these allegations in his SAC. *See* SAC ¶¶ 171-88. But the extraordinary extent to which the Livestreams comment on and criticize Stebbins' Video, and

---

[2] This citation format refers to specific timestamps in the videos—*i.e.*, hours, minutes, and seconds.

[3] *Compare* Video at 00:31:10 *with* Livestream #1 at 07:49:12.

his opinions about *Fallout*, is manifest from a review of the Livestreams. Creetosis generally plays Stebbins' Video for mere *seconds* before pausing it for a much longer segment of responsive commentary and analysis, and then briefly resumes the Video before pausing it again to react, and on and on. Exs. A, B. This pattern repeats for approximately 14.5 hours across the two Livestreams. The segments of paused commentary and criticism—which account for roughly **13 hours (or 90%)** of that runtime—generally range from anywhere between several seconds to almost thirty minutes long, during which time only a still image from Stebbins' Video is viewable on the screen.[4]

Stebbins' Video is never the only visual on the screen. For the entirety of the Livestreams there are circular images depicting the commentators' icons visible at the bottom of the screen, beneath where the Video is displayed. *See* Exs. A, B. And on the right-hand side of the screen there is, at all times, a full-length "live chat" panel showing a stream of comments by third-party YouTube users who are reacting to the Livestreams in real time. *See, e.g.*, Ex. A at 00:00:09, Ex. B at 00:00:02 ("Welcome to live chat" chyron). There are also segments of the Livestreams where Stebbins' Video is not shown on the screen at all,[5] and where the commentators superimpose images on top of the paused Video (*e.g.*, to display third-party comments regarding *Fallout*).[6]

---

[4] The following are representative portions of the Livestreams denoting the approximate length of alternating segments of playback of Stebbins' Video ("P") and paused commentary ("C"). **See Livestream #1** at 05:04:33-05:05:07 ("P"; 34 seconds), 05:05:08-05:05:28 ("C"; 20 seconds); 05:05:28-05:05:34 ("P"; 6 seconds); 05:05:35-05:07:27 ("C"; ~2 minutes), 05:07:27-05:07:45 ("P"; 17 seconds), 05:07:45-05:09:51 ("C"; 2 minutes); 05:09:51-05:09:59 ("P"; 8 seconds); 05:09:59-05:11:24 ("C"; ~1.5 minutes), 05:11:24-05:11:44 ("P"; 20 seconds), 05:11:44-05:12:47 ("C"; 1 minute), 05:12:47-05:12:54 ("P"; 7 seconds), 05:12:54-05:15:24 ("C"; 2.5 minutes), 05:15:24-05:15:41 ("P"; 17 seconds), 05:15:41-05:16:36 ("C"; 55 seconds), 05:16:36-05:19:58 (alternating "P" and "C" between 10-55 seconds); 05:19:58-05:23:11 ("C"; ~3.5 minutes); 06:50:40-06:51:00 ("P"; 20 seconds); 06:51:01-06:54:12 ("C"; ~3 minutes). **See Livestream #2** at 04:44:35-04:45:14 ("P"; 39 seconds), 04:45:15-04:49:45 ("C"; 4.5 minutes), 04:49:46-04:50:03 ("P"; 17 seconds); 04:50:04-04:57:06 ("C"; ~7 minutes), 04:57:07-04:57:15 ("P"; 8 seconds), 04:57:16-04:57:55 ("C"; 39 seconds), 04:57:56-04:58:20 ("P"; 24 seconds); 04:58:20-05:15:41 ("C"; ~17 minutes)). *See also, e.g., id.* at 01:55:26-02:23:56 ("C"; 28.5 minutes), 02:55:51-03:12:55 ("C"; ~17 minutes), 03:13:06-03:26:39 ("C"; 13.5 minutes), 05:55:51-06:16:31 ("C"; ~20.5 minutes).

[5] *See, e.g.*, Livestream #1 at 07:51:08-08:01:50 (~10.5 minutes).

[6] *See, e.g.*, Livestream #1 at 07:29:55-07:30:57 (~1 minute); Livestream #2 at 02:58:45-03:04:15 (~5.5 minutes), 03:17:58-03:25:31 (~7.5 minutes).

1    Stebbins alleges that the Livestreams infringe his copyright in the Video. SAC ¶¶ 171-88.

2  Because YouTube hosted the Livestreams and "refused to take them down" in response to

3  Stebbins' DMCA notices, he claims "YouTube is now vicariously liable." *Id.* ¶¶ 171-72, 247.

4                                          **ARGUMENT**

5  **I.    CREETOSIS' LIVESTREAMS ARE A FAIR USE OF STEBBINS' VIDEO**

6         To establish vicarious infringement against YouTube, Stebbins must show direct

7  infringement by Creetosis. *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 937 (9th Cir.

8  2010). He cannot make that showing because Creetosis' Livestreams are non-infringing fair uses

9  under Section 107 of the Copyright Act, which provides that "the fair use of a copyrighted work,

10 including such use by reproduction in copies … for purposes such as criticism [or] comment, …

11 is not an infringement of copyright."  17 U.S.C. § 107. "[F]air use is a mixed question of fact and

12 law." *Google LLC v. Oracle Am., Inc.*, 593 U.S. 1, 49 (2021). Nonetheless, courts routinely dismiss

13 copyright infringement claims under Rule 12(b)(6) where fair use is apparent on the face of the

14 complaint. *See, e.g., Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008)

15 ("fair use may be considered on a motion to dismiss … when no material facts are in dispute");

16 *Stebbins v. Google*, 2023 WL 6139454, at *8 (fair use dismissal); *Savage v. Council on American-*

17 *Islamic Relations, Inc.*, 2008 WL 2951281, at *9-10 (N.D. Cal. Jul. 25, 2008) (same); *Santos v.*

18 *Kimmel*, --- F. Supp. 3d ----, 2024 WL 3862149, at *7 (S.D.N.Y. Aug. 19, 2024) (same); *Hughes*

19 *v. Benjamin*, 437 F. Supp. 3d 382, 389 (S.D.N.Y. 2020) (same).

20       In considering a fair use motion to dismiss, the Court may consider "materials incorporated

21 into the complaint by reference, and matters of which the court may take judicial notice." *Metzler*

22 *Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008) (citation omitted).

23 That includes the Video and Livestreams, which are referenced, described, and hyperlinked in the

24 SAC (¶¶ 34, 171). *See, e.g.*, *Stebbins v. Google*, 2023 WL 6139454, at *6 (taking judicial notice

25 of Stebbins' video and YouTube content that were "incorporated by reference" in complaint).

26       Section 107 of the Copyright Act identifies four fair-use factors courts must consider: (1)

27 "the purpose and character of the use, including whether such use is of commercial nature or is for

28 nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and

1   substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the

2   effect of the use upon the potential market for or value of the copyrighted work." "The four factors

3   are to be considered together in light of the purposes of copyright, not in isolation." *Sony Comput.*

4   *Ent't Am., Inc. v. Bleem*, *LLC*, 214 F.3d 1022, 1026 (9th Cir. 2000) (citation omitted). "Not all

5   factors must be met in order for the Court to make a determination of fair use." *Sedgwick Claims*

6   *Mgmt. Servs., Inc. v. Delsman*, 2009 WL 2157573, at *4 (N.D. Cal. July 16, 2009).

7        In its Screening Order, the Court wrote that it "does not hold that Creetosis' work is not

8   protected by the fair use defense, but merely that the defense is not obvious from the face of the

9   SAC." Screening Order at 9 n.2. It does not appear that the Court had the benefit of reviewing the

10  Livestreams, which were removed in September 2023, over a year before the Screening Order.

11  ***Now that the Livestreams are before the Court, YouTube respectfully submits they are obvious***

12  ***fair uses of Stebbins' Video***. Stebbins' vicarious infringement claim thus fails as a matter of law.

13       **A.    Factor 1: Creetosis' Livestreams Are Highly Transformative**

14       The first factor considers "the purpose and character of the use, including whether such use

15  is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). It asks

16  "whether the new work merely 'supersede[s] the objects' of the original creation … or instead

17  adds something new, with a further purpose or different character," thus making it

18  "transformative." *Andy Warhol v. Goldsmith*, 598 U.S. 508, 527-29 (2023) (quoting *Campbell v.*

19  *Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994)) (cleaned up). "[T]he more transformative the

20  new work, the less will be the significance of other factors … that may weigh against" fair use.

21  *Campbell*, 510 U.S. at 579 (citation omitted). Section 107 "expressly permits fair use for the

22  purposes of criticism and comment." *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148,

23  1153 (9th Cir. 1986); *accord Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792, 800 (9th Cir. 2003)

24  ("works that comment and criticize … are by their nature often sufficiently transformative to fit

25  clearly under the fair use exception.") (citation omitted). Where a work's "commentary has …

26  critical bearing on the substance or style of the original" work, "the claim to fairness in borrowing"

27  is especially strong. *Campbell*, 510 U.S. at 580.

28

It is readily apparent that both Livestreams are transformative uses of Stebbins' Video for the purpose of commenting on and criticizing his opinions about the *Fallout* game. Stebbins previously conceded as much, describing the Livestreams as "highly transformative," "freely admit[ting]" they contain "*ample* criticism and commentary about my [Video]," and averring that they "start[] off hot" in the fair use analysis. FAC ¶¶ 86-87, 92. This cannot reasonably be disputed.

Stebbins alleges that he created his Video to "review and critique" *Fallout* using "extensive" "in-game clips to illustrate my points." SAC ¶¶ 34, 36. The Livestreams, in turn, review and critique *Stebbins' Video* and his opinions about *Fallout*. *Id.* ¶¶ 174-75, 177, 184. Despite their enormous length, this is apparent from even a cursory review. Creetosis typically plays Stebbins' Video for *seconds* before pausing playback so that the commentators can directly respond to the points Stebbins made about *Fallout* during the prior segment. *See supra* at n.4. During their paused reaction, the commentators are critical of Stebbins' Video and his opinions about *Fallout's* design, storyline, and gameplay, and discuss in extensive detail why those opinions are meritless, misguided, and/or overly nitpicky, while occasionally engaging in additional back-and-forth commentary regarding their own views (and responding to real-time comments from the Livestreams' viewers). The examples in footnote 4 above are highly illustrative.[7] A viewer can press "play" at virtually any point and observe the alternating segments of brief Video playback and paused commentary. It is not necessary to be a "gamer" or have played *Fallout* to appreciate the extraordinary extent to which the Livestreams comment on and criticize Stebbins' Video.

---

[7] *See, e.g.*, **Livestream #1** at 06:50:40-06:51:00 (Stebbins offering opinions on *Fallout*'s "ineffective" "map marker" feature for helping direct players), 06:51:01-06:54:12 (commentators responding to Stebbins' review of the feature and suggesting that he may be intentionally trying to "make the map marker look bad," and responding to live chat participant's suggestion for how to improve it); **Livestream #2** at 04:44:35-04:45:14 (Stebbins offering his opinions on the "NCR," a fictional governmental entity in *Fallout*), 04:45:15-04:49:45 (commentators directly responding with their own views of NCR's "system of governance," discussing the conflicts between the NCR and other factions in the game, and arguing that the NCR is "in a bad position" and not "the dominant force that Acerthorn [*i.e.*, Stebbins] seems to think it is"), 04:49:46-04:50:03 (Stebbins discussing NCR's copying of "culture and ideals of dead civilization"), 04:50:04-04:51:25 (commentators disputing Stebbins' assertion of copying and explaining that what will "kill the NCR" is its "inability to adapt to a changing situation," and then discussing a *Fallout* fan theory).

Such criticism and commentary is unquestionably transformative, and indeed is "at *Campbell*'s [highest] ebb" of transformativeness because it has substantial "critical bearing on the substance of" Stebbins' Video. *Goldsmith*, 598 U.S. at 530, 546 (quotation omitted). Courts confronting analogous facts have consistently held as a matter of law that similar "reaction videos"—*i.e.*, "a large genre of YouTube videos" that "intersperse short segments of another's work with criticism and commentary" (*Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 40 n.1 (S.D.N.Y. 2017))—are transformative fair use. *See, e.g.*, Screening Order at 6 (dismissing another Stebbins claim where defendant used "portion" of his video to "criticize[] the video"); *City of Inglewood v. Teixeira*, 2015 WL 5025839, at *6, *8 (C.D. Cal. Aug. 20, 2015) (granting motion to dismiss where defendant's YouTube videos were "highly transformative" because they used portions of plaintiff's videos "to comment on, and criticize [plaintiff's] political activities"); *Hughes*, 437 F. Supp. 3d at 391 (same, where it was "clear from the face of [plaintiff's] Complaint that [defendant] copied portions of" the plaintiff's video to include in his own YouTube video "for the transformative purposes"); *Santos*, 2024 WL 3862149, at *5 (similar).

In *Hosseinzadeh*, for example, the defendants uploaded a "reaction video" to YouTube that "comment[ed] on and criticize[d]" the plaintiff's YouTube video by "interspers[ing] relatively short segments of [the plaintiff's] video with long segments of [the defendants'] commentary," with the defendants repeatedly "play[ing], stop[ping], and continu[ing] to comment on and criticize" the plaintiff's video. 276 F. Supp. 3d at 40. The court held that the defendants' video was "quintessential criticism and comment" and thus fair use. *Id.* at 45-46. So too here. It is frivolous for Stebbins to assert, in one breath, that he "believe[s]" his Video's "extensive" use of "footage" from the *Fallout* game to "review and critique it" "falls under fair use," SAC ¶ 34, and then claim, in another, that Creetosis' use of *his* Video for the same purpose does not. This self-serving weaponization of copyright law is why Stebbins is a vexatious litigant.

Stebbins further alleges that factor one weighs against fair use because the Livestreams "were commercialized," since Creetosis received some (minimal) "monetary donations" "attached to messages[s]" left by third parties who watched and participated in the Livestreams. SAC ¶ 173. Although "[a]nother element of the first factor analysis is whether the work's 'purpose' was

commercial or had a non-profit aim," "even works involving comment and criticism 'are generally conducted for profit in this country,'" and any "commercial qualities become less important" when a work is "transformative." *Mattel*, 353 F.3d at 803 (cleaned up); *accord* Screening Order at 6 (a "critical purpose reduces the relevance of the commercial … inquiry").

Here, because the Livestream are highly transformative, the first factor heavily favors fair use, despite any alleged commercial benefit. *See City of Inglewood*, 2015 WL 5025839, at *8-9 (fair use despite allegations that YouTube videos "generate[d] income," since they were "quintessential transformative works for … criticism and commentary"); *DraftExpress, Inc. v. Whistle Sports, Inc.*, 2022 WL 16962285, at *3 (C.D. Cal. Aug. 2, 2022) (similar); *Santos*, 2024 WL 3862149, at *5 (similar); *cf. SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278-79 (9th Cir. 2013) ("commercial production is of little significance" given transformativeness).

### B.    Factor 2: Stebbins' Video Is Far from the Core of Copyright

The second factor concerns the "nature of the copyrighted work." 17 U.S.C. § 107(2). Courts "consider whether the [allegedly infringed] work is imaginative and original, or whether it represented a substantial investment of time and labor made in anticipation of a financial return." *Hustler*, 796 F.2d at 1153-54. "The scope of fair use is greater when 'informational' as opposed to more 'creative' works are involved." *Id.* This factor "typically has not been terribly significant in the overall fair use balancing," *Mattel*, 353 F.3d at 803 (citation omitted).

The second factor also weighs decidedly in favor of fair use because Stebbins' Video is indisputably more informational than creative. The visuals of Stebbins' so-called "Motion Picture" work consist almost exclusively of "footage of the" *Fallout* game, SAC ¶ 34, which Stebbins did not create. As for Stebbins' contributions, he bases his claim of "minimal creativity" on the Video containing his "various opinions about the game," including about basic elements such as the quality of *Fallout's* "introduction," its "aestehtic[s]," and its "plot" and gameplay. *Id.* ¶¶ 36, 37(a)-(d). *See, e.g.*, Video at 00:05:45-00:06:55 (describing introduction, tutorial, and character creation process); *id.* at 00:14:45-00:20:11 (graphics); *id.* at 00:48:00-00:49:20 (character's traits).

As Judge Thompson held in dismissing a claim against Google based on another one of Stebbins' videos, his "opinions about a game" are "undoubtedly more informational than creative,"

and "the copyright protection is thin." *Stebbins v. Google*, 2023 WL 6139454, at *7; *accord* Screening Order at 6 (Stebbins' video "informational" and entitled to "thin copyright protection"); *Savage*, 2008 WL 2951281, at *6-7 (opinions about Islam "more informational than creative").

"The fact that a work is published or unpublished also is a critical element of its nature." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). "Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred." *Id.* When Stebbins posted the Video, he distributed it publicly and granted YouTube a license to reproduce and display it. That is a "publication," 17 U.S.C. § 101, and favors fair use, *see Compendium of U.S. Copyright Office Practices* (3rd ed. Jan. 28, 2021) § 1906.1 ("[p]ublication occurs when copies … are offered to … websites with a license permitting further distribution or display"); *Brunson v. Cook*, 2023 WL 2668498, at *13 (M.D. Tenn. Mar. 28, 2023) (work "published" when "made available to YouTube … due to the terms … to which a creator on the[] platform[] must agree"). So too does the fact that Stebbins made his Video "available to the widest possible audience for free." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1120 (D. Nev. 2006).

## C.    Factor 3: Creetosis' Use Was Reasonable in Relation to the Purpose

The third factor considers "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). "[T]he extent of permissible copying varies with the purpose and character of the use," and thus this inquiry "will harken back to the first of the statutory factors." *Campbell*, 510 U.S. at 586–87. Even "entire verbatim reproductions are justifiable where the purpose of the work differs from the original." *Mattel*, 353 F.3d at 803 n.8. That is particularly true where the defendant uses a copyrighted work for transformative commentary or criticism. *See*, *e.g.*, *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1178-79 (9th Cir. 2013) (fair use where "use of the entire work was necessary to achieve" transformative purpose).

Stebbins' infringement claim is based on two separate allegedly infringing Creetosis videos. Livestream #1 only uses 31 minutes of Stebbins' 1.5-hour Video (~33%), and Livestream #2 uses the remaining hour of Stebbins' Video (~66%). *See supra* at 4. Thus, neither Livestream copies the entirety of Stebbins' Video. And, importantly, each uses portions of the Video to provide

extensive and transformative criticism and commentary, which comprise the vast majority of the Livestreams' content. *See supra* at 4-5, 7-9. Courts have held that similar usage rates in videos critiquing a plaintiff's work—including YouTube reaction videos—weigh in favor of fair use or are at worst neutral. *See*, *e.g.*, *Hughes*, 437 F. Supp. 3d at 393-94 (third factor favored fair use where defendant's YouTube videos used 20% of plaintiff's YouTube video for "critical purpose"); *Northland Fam. Plan. Clinic, Inc. v. Ctr. for Bio-Ethical Reform*, 868 F. Supp. 2d 962, 980 (C.D. Cal. 2012) (same, where defendant's videos used between 27% and 43% of plaintiff's video for parody); *Hosseinzadeh*, 276 F. Supp. 3d at 46 (factor neutral where defendant's YouTube video used 60% of plaintiff's YouTube video in "short segments" for "transformative" commentary).

The third factor favors fair use here too, particularly given the unusual enormity of the Livestreams' commentary. This is not a case in which the secondary work borrows disproportionality from the original only to provide minimal commentary in response. To the contrary, each Livestream's use of a portion of Stebbins' Video—in "short segments" and "interspers[ed]" with **three hours** (Livestream #1) and **ten hours** (Livestream #2) of "commentary and critique along the way"—was "reasonable to accomplish" Creetosis' transformative purpose of responding to the entirety of the Video. *Hosseinzadeh*, 276 F. Supp. 3d at 46. Given each Livestream's highly transformative nature, "the extent of permissible copying" is greater, *Campbell*, 510 U.S. at 586–87, and the third factor favors fair use.

### D.    Factor 4: Creetosis' Livestreams Do Not Affect Any Market for the Video

The fourth factor concerns "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). It "consider[s] the secondary use's impact on the market for the original work" and its derivatives. *SOFA Ent.*, 709 F.3d at 1280. This factor is considered "undoubtedly the single most important element of fair use." *Oracle*, 593 U.S. at 50 n.5 (citation omitted). Importantly, the "Supreme Court has held that critique or commentary of the original work …. that kills demand for the original by force of its criticism … does not create a cognizable harm." *Savage*, 2008 WL 2951281, at *8 (citing *Campbell*, 510 U.S. at 591-92). That is because "[c]opyright law is not designed to stifle critics." *Fisher v. Dees*, 794 F.2d 432, 437 (9th Cir. 1986). Thus, "the economic effect … with which [courts] are concerned is not [the] potential

1  [of the secondary use] to destroy or diminish the market for the original – any bad review can have

2  that effect – but rather whether it *fulfills the demand* for the original." *Id.* at 438.

3          This factor also heavily favors fair use. Stebbins has not alleged that there is ***any*** economic

4  market for his Video or its derivatives. *See Savage*, 2008 WL 2951281, at *9 (fair use where

5  "plaintiff fail[ed] to allege … that plaintiff currently has, or ever had, any kind of market for the

6  copyrighted work …."). Nor could he plausibly claim a market exists for a 1.5-hour video of him

7  discussing his opinions about a game, especially since he shared it with the world for free on

8  YouTube. But even if there were a market, the Livestreams, which provide an entirely different

9  user experience, could not possibly usurp it. Neither Livestream copies the Video in its entirety,

10  so neither could serve as a "market substitute, per se." SAC ¶ 185. And it would defy reality to

11  suggest that "anyone seeking to enjoy [Stebbins' Video] on its own will" instead choose to watch

12  an ***eight and/or eleven hour*** Livestream, which provide "a very different experience" by

13  "respond[ing] to and transform[ing]" Stebbins' Video through "moment-by-moment

14  commentary." *Hosseinzadeh*, 276 F. Supp. 3d at 47. It is specious for Stebbins to allege that the

15  Livestreams are market substitutes because "if you cut out all the parts where [Creetosis] is talking,

16  you would have a verbatim copy of my video." SAC ¶ 184. Those "parts" are the overwhelming

17  majority of each Livestream's runtime, and no one desirous of watching Stebbins' Video would

18  "cut" the Livestreams apart rather than just watch *his* Video, which remains available for free.[8]

19          Courts consistently dismiss copyright claims where, as here, critical secondary uses cannot

20  plausibly substitute for the original work or cause the type of market harm that copyright law

21  protects. *See, e.g.*, Screening Order at 7 (critical nature of YouTube video that copied a portion of

22  Stebbins' video "make[s] clear that [defendant's] video is highly transformative and does not

23  replace Plaintiff's"); *Hughes*, 437 F. Supp. 3d at 394 ("[A]lthough [defendant's YouTube video]

24  is comprised entirely of portions of [plaintiff's YouTube video], there is no reason to think that

25

26          ───────────────────

27          [8] Stebbins' allegation is also false. SAC ¶ 184. In addition to Stebbins' Video, there are always other visuals on the screen during each Livestream (and there are also portions of each Livestream where Stebbins' Video is not displayed at all). *Supra at* 5. So neither Livestream could ever be considered merely a "verbatim" copy of the Video. SAC ¶ 184.

28

[plaintiff's] audience will abandon her progressive YouTube channel to watch the derisively-titled [video] on a conservative YouTube channel simply because it contains parts of her work"); *Hosseinzadeh*, 276 F. Supp. 3d at 47 (critical YouTube reaction video "does not" substitute for plaintiff's video and thus "does not (and indeed, cannot) 'usurp a market that properly belongs to the copyright-holder'") (citation omitted); *City of Inglewood*, 2015 WL 5025839, at *12 (no market harm where defendant used videos "exclusively for the purpose of presenting [defendant's] views and commentary on [plaintiff's] politics"); *Savage*, 2008 WL 2951281, at *9 (similar).

## II.   STEBBINS' INFRINGEMENT CLAIM IS DEFEATED BY THE LICENSE HE GRANTED YOUTUBE

Stebbins' infringement claim against YouTube also fails because he licensed YouTube to use his Video. "[I]t is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement." *Bus. Casual Holdings, LLC v. YouTube, LLC*, 2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022) (citation omitted); *accord Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1121 (9th Cir. 1999) (a "copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement") (citation omitted). The existence of a license "creates an affirmative defense to a claim for copyright infringement" that "may be considered properly on a motion to dismiss." *Gallo v. Simon & Schuster, Inc.*, 2014 WL 12599784, at *3 (C.D. Cal. July 9, 2014).

By creating a channel on YouTube and posting content, Stebbins accepted YouTube's TOS. *See* TOS. In so doing, he agreed to a provision entitled "License to YouTube":

> By providing Content to the Service, you grant to YouTube a worldwide, non-exclusive, royalty-free, sublicensable and transferable license to use that Content (including to reproduce, distribute, prepare derivative works, display and perform it) in connection with the Service and YouTube's (and its successors' and Affiliates') business, including for the purpose of promoting and redistributing part or all of the Service.

*Id.* at 8-9.[9] The "Content" Stebbins licenses to YouTube includes "videos, audio (for example music and other sounds), graphics, photos, [and] text … provided by" Stebbins. *Id.* at 4. YouTube's

---

[9] The license is materially identical in each version of YouTube's TOS in effect since Stebbins posted the Video to his channel on October 13, 2019. *Compare* Auster Decl., Ex. 1 at 6; Ex. 2 at 10; Ex. 3 at 8; Ex. 4 at 8; Ex. 5 at 8; Ex. 6 at 8-9.

1  license endures until after Stebbins removes his "Content" from the service (which has not

2  happened). *Id.* at 9. This license disposes of Stebbins' infringement claim against YouTube.

3        Stebbins claims that Creetosis infringed his copyright by playing portions of his Video (or

4  "Content") during each Livestream, and that YouTube is "vicariously liable for th[ose]

5  infringement[s]" because YouTube hosted the Livestreams containing Stebbins' Content on its

6  service. SAC ¶¶ 172, 247. But the License Stebbins granted YouTube squarely covers the content

7  at issue and expressly authorized YouTube "to reproduce, distribute, prepare derivative works,

8  display and perform" Stebbins' Video on its service. TOS at 8. That is exactly what Stebbins'

9  claim accuses YouTube of doing. Under the language of the TOS, it makes no difference whether

10  the use of Stebbins' "Content" occurred in connection with YouTube's hosting of Stebbins' Video

11  or its hosting of other users' videos (the Livestreams) that include Stebbins' content—YouTube is

12  licensed either way. *See Bus. Casual*, 2022 WL 837596, at *4 (holding that YouTube's license

13  defeated infringement claim based on allegedly infringing third-party videos that included portions

14  of the plaintiff's licensed YouTube videos).

15        Where, as here, the defendant presents a license that covers the allegedly infringing

16  activity, courts consistently grant motions to dismiss copyright infringement claims. *See, e.g.*, *id.*

17  at *5 (dismissing claim because "YouTube has a clear and broad License to [plaintiff's] content");

18  *Moses v. Fedida*, 2018 WL 7501122, at *8 (C.D. Cal. Dec. 12, 2018) (same, where "express terms"

19  of agreement "establish the license defense") (cleaned up); *Beijing Zhongyi Zhongbiao Elec. Info.*

20  *Tech. Co. Ltd. v. Microsoft Corp.*, 2013 WL 6979555, at *6 (W.D. Wash. Oct. 31, 2013) (similar),

21  *aff'd*, 655 F. App'x 564 (9th Cir. 2016); *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 123

22  (S.D.N.Y. 2015) (similar); *cf Richardson v. CBS Studios Inc.*, 2013 WL 12120265, at *4 (C.D.

23  Cal. Sept. 25, 2013) (granting summary judgment to defendant because license barred direct and

24  secondary infringement claims). Stebbins' license to YouTube bars his vicarious infringement

25  claim and independently requires dismissal with prejudice.

26  **CONCLUSION**

27        For these reasons, Stebbins' claim against YouTube should be dismissed with prejudice.

28

1    Dated: February 5, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By:    /s/ *Jeremy P. Auster*
       Jeremy P. Auster (*admitted pro hac vice*)
       1301 Avenue of the Americas, 40th Floor
       New York, NY 10019
       Telephone: (212) 999-5800
       Facsimile: (866) 974-7329
       E-mail: jauster@wsgr.com

       Laura Hernandez, State Bar No. 344641
       One Market Plaza, Spear Tower, Suite 3300
       San Francisco, CA 9105
       Telephone: (415) 947-2000
       Facsimile: (866) 974-7329
       E-mail: lhernandez@wsgr.com

       *Counsel for Defendant YouTube, LLC*