David Stebbins (pro se Plaintiff)   123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947              acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,                                            PLAINTIFF

VS.                        Case 3:22-cv-00546-JSW

ALPHABET INC, ET AL                                         DEFENDANTS

### OBJECTION TO REPLY EVIDENCE IN RESPONSE TO DKT. 70, REPLY IN CONTINUED SUPPORT OF DKT. 58, MOTION TO DISMISS

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Objection to Reply Evidence in accordance with Local Rule 7-3(d)(1) in response to Dkt. 70, the Defendant's Reply in Continued Support of Motion to Dismiss in the above-styled action.

1.  There is only one new argument the defendants have raised which can be properly objected to in this surreply: In regards to the fourth factor of fair use, they previously argued that, as a matter of *fact*, it is inconceivable that the reaction streams would create a market substitute. This is best evidenced by their language in the original Motion to Dismiss, Page 19, when they argue that "it would defy reality to suggest that 'anyone seeking to enjoy Stebbins' Video on its own will" instead choose to watch" Creetosis's reaction. This is clearly an argument of fact, not of law.

2.  But now, the Defendants are switching horses and instead arguing that "critical secondary uses... cannot, ***as a matter of law***, cause the type of market substitution harm that copyright law protects" (emphasis added). In other words, they are now arguing that critical works enjoy a categorical exemption from the "market substitute" factor of fair use in its entirety, and that it is legally irrelevant whether or not a person who saw Creetosis's 2-part reaction of my video would feel any need to go and watch my video (which they already saw in its entirety) again.

3.  Since this is a new argument raised by the defendants in their reply, I should have the right to argue against it in this Objection. Alternatively, I ask that the Court not consider this argument as it was improperly raised in the reply. See Stebbins v. Moon, Civil Action 2:24-cv-

140, 2 n.2 (S.D.W. Va. Apr. 15, 2024) ("courts generally will not address new arguments raised in a reply brief because it would be unfair").

4. If the Court chooses to consider it, then this is such an absurd position that it hardly needs rebuttal. Defendants say I "ignored" the established case law, but that's only because the cases they cite are so inapposite that they aren't worth addressing. For example, they cite Hosseinzadeh over and over again like they're a 4th grader who just learned the definition of a fun new word, but as I pointed out in my opposition, Ethan Klein only used 60% of the original video, not 100%. See Dkt 67, ¶ 47.

5. In fact, Ethan Klein himself has become an outspoken critic of precisely these types of reaction streams: Where the viewer watched a video in its entirety and for the first time, providing little more than laymen opinions on what he's watching. See https://www.youtube.com/clip/Ugkx0Pkjm1tFbB52lsh_NnPZDfai5mpNEDoS (also, from this very pundit, "However, a key difference is that H3 [the series Ethan Klein puts out] rarely plays a video in its entirety").

6. At no point anywhere in the case laws that they cite (and nowhere in the case law at all, according to my research) is there anything even remotely suggesting that critical works are categorically exempt from the market substitution requirement. In fact, the cases that I have cited (which the defendants themselves ignore) actually say the complete opposite. Namely, there is the case law I provided in ¶ 57(b) of my Opposition, which specifically mentioned reviews as a hypothetical example. The Defendants scoff at my alleged ignoring of their case law citations, yet they feel entitled to ignore mine.

7. The absolute closest the defendants have ever come to anything of that sort is their citation that "there is no protectible derivative market for criticism." See Campbell v. Acuff-Rose Music, Inc., 510 US 569, 592 (1994). However, that does not mean that criticism gets a blanket immunity from the market substitute requirement. It merely means that, when Work A is critical of Work B, then Work A does not infringe, in the first instance, on the legal monopoly provided in 17 USC § 106(2), but only specifically (2). Reviews and other critical works can still infringe upon any of the other five legal monopolies in that statute.

8. I'm not suing today over a violation of my legal monopoly under 17 USC § 106(2). I'm suing over a violation of my legal monopolies under 17 USC § 106(1), § 106(3), and § 106(4). Therefore, the fact that "there is no protectible derivative market for criticism" is of no consequence to the instant case.

9. Therefore, the reaction streams do indeed create a market substitute. Full stop.

10. Wherefore, premises considered, I respectfully request that the Motion to Dismiss be denied, and for any other relief to which I may be entitled.

So submitted on this, the 27th day of February, 2025.

/s/ David Stebbins
David Stebbins