UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID A. STEBBINS,<br><br>Plaintiff,<br><br>v.<br><br>ALPHABET INC., et al.,<br><br>Defendants. | Case No. 22-cv-00546-JSW<br><br>**ORDER GRANTING DEFENDANT YOUTUBE LLC'S MOTION TO DISMISS; DENYING PLAINTIFF'S MOTION TO STAY**<br><br>Re: Dkt. Nos. 58, 60 |

Now before the Court is the motion to dismiss filed by Defendant YouTube, LLC. (Dkt. No. 58, Mot. to Dismiss.) Also before the Court is Plaintiff David A. Stebbins' motion to stay the motion to dismiss. (Dkt. No. 60.) The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds both motions suitable for resolution without oral argument. *See* Civ. L.R. 7-1(b). For the following reasons, the Court GRANTS YouTube's motion to dismiss, with prejudice, and DENIES Plaintiff's motion to stay.

## BACKGROUND

Plaintiff is a pro se litigant proceeding in forma pauperis. The Court screened Plaintiff's Second Amended Complaint ("SAC") and permitted Plaintiff to proceed with his copyright infringement claim against YouTube and John Doe #1 d/b/a "Creetosis" as it relates to one of Plaintiff's videos, an October 13, 2019 video entitled "Fallout: New Vegas Retrospective" (the "Retrospective"). (Dkt. No. 36, Second Screening Order, at 11.) The Court dismissed Plaintiff's claims for infringement of four additional videos and ten 2D images. (*Id.*) The Court also permitted Plaintiff to proceed with a claim against John Doe #3 d/b/a "Bibi Faizi" for misrepresentation under the Digital Millenium Copyright Act of 1998 ("DMCA"). (*Id.*)

The Retrospective is a 90-minute video in which Plaintiff, using the pseudonym "Acerthorn," opines about the Bethesda Softworks video game Fallout: New Vegas. (*See* SAC ¶

36.) Plaintiff edits together numerous in-game video clips with his own narration, digital art, and at times, text.  (*See id.* at ¶¶ 36-37; *see also id.* at ¶ 34 (hyperlinking video at https://www.youtube.com/watch?v=T6Xp-Audx3w (last visited July 2, 2025)).)  Stebbins registered the video with the United States Copyright Office more than two years after its creation, on December 17, 2021.  (*Id.* ¶ 38.)

On September 12 and September 15, 2021, Creetosis and others performed livestream videos in which they watched, reacted to, and commented on the Retrospective (the "Livestreams").  (*Id.* ¶ 171.)  According to Plaintiff, Creetosis "and some friends of his watched two of [Plaintiff's] Youtube [sic] videos in their entirety, literally every second of them."  (*Id.*)  Plaintiff alleges that "if you cut out all the portions where [Creetosis] is talking, you would have a verbatim copy" of the Retrospective.  (*Id.* ¶ 184.)  On January 15, 2022, Plaintiff issued DMCA takedown notices to YouTube, and YouTube refused to take down the videos.  (*Id.* ¶ 172.)

The Court will address additional allegations as necessary in its analysis below.

## ANALYSIS

### A. The Court Denies Plaintiff's Motion to Stay.

#### 1. Applicable Legal Standards.

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997).  Courts consider, among other factors, judicial efficiency and prejudice to the non-moving party.  *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

#### 2. A Stay Is Unwarranted.

Plaintiff contends that the Court should issue a stay until all defendants have appeared in order to preserve judicial economy and prevent piecemeal litigation.  YouTube responds that Plaintiff's ability to serve the individual defendants has no bearing on the merits of YouTube's motion, and, further, that the Court has everything it needs to rule on the motion to dismiss.

The Court agrees with YouTube.  YouTube's motion is fully briefed.  The Court has sufficient information to make a ruling, and Creetosis and Bibi Faizi's participation is irrelevant.

On reply, Plaintiff argues that he will be unfairly prejudiced in the absence of a stay

because the Court denied, without prejudice, Plaintiff's motion for issuance of a subpoena duces tecum. Plaintiff contends that he will be unable to locate the individual defendants unless YouTube's motion is stayed. This is a non sequitur. The Court denied Plaintiff's motion for a subpoena without prejudice, meaning Plaintiff may try again if he can do so in good faith. The Court's decision to deny Plaintiff's request for a stay has no bearing on Plaintiff's ability to renew his motion for a subpoena.

**B. The Court Grants YouTube's Motion to Dismiss.**

    **1. Applicable Legal Standards.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990). Where, as here, the plaintiff proceeds without counsel, the Court has an obligation to liberally construe the pleadings in the plaintiff's favor. However, dismissal is nevertheless appropriate if the plaintiff has been given notice of the deficiencies and has previously been given leave to amend, unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

**2.    The Court Finds the Videos Incorporated by Reference.**

YouTube requests the Court take judicial notice of the Retrospective and Creetosis's Livestreams.  (Dkt. No. 59, Request for Judicial Notice.)  YouTube also contends that the videos are incorporated by reference.

Plaintiff provides a hyperlink to the Retrospective in the SAC.  (SAC ¶ 34.)  Plaintiff also provides hyperlinks to the Livestreams in the SAC, but the videos are no longer available at those links.  (*Id.* ¶ 171.)

As a general rule, "a district court may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion."  *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (citation omitted).  However, documents subject to judicial notice or which are incorporated by reference may be considered on a motion to dismiss.  *See Mack S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104 (1991).  In doing so, the Court does not convert a motion to dismiss to one for summary judgment.  *Id.*

Materials which are not attached to a complaint but "whose contents are alleged in a complaint and whose authenticity no party questions" may be found to be incorporated by reference.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *superseded by statute on other grounds*).

Plaintiff does not object to the Court's consideration of the videos, and he does not dispute their authenticity.  Plaintiff claims that YouTube cannot provide the Livestreams to the Court without violating YouTube's terms of service, but he does not contend that those terms negate the Court's ability to consider the Livestreams.

The Court finds that the Retrospective and both Livestreams are incorporated by reference into the SAC.  The SAC relies extensively on the videos.  Courts routinely consider videos at the motion to dismiss stage when they are central to the plaintiff's copyright infringement claims.  *See, e.g.*, *Whitehead v. Netflix, Inc.*, No. 22-CV-04049-CRB, 2022 WL 17342602, at *8 (N.D. Cal. Nov. 30, 2022) (collecting cases and noting courts "frequently employ judicial notice and the

1  incorporation-by-reference doctrine to consider the content of materials in copyright infringement
2  cases at the motion to dismiss stage"). The Court therefore grants YouTube's request and
3  considers the videos in this Order.

### 3. Creetosis' Copying of the Retrospective Is Fair Use.

Plaintiff alleges that Creetosis violated Section 106 of the Copyright Act by airing the Livestreams. *See* 17 U.S.C. § 106. To establish a claim for infringement under Section 106, Plaintiff must allege: (1) ownership of the allegedly infringed material; and (2) that the alleged infringer violated "at least one exclusive right granted to copyright holders under 17 U.S.C. [section] 106." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1159 (9th Cir. 2007). If Plaintiff establishes both elements, Creetosis (and YouTube) may nevertheless avoid liability if the infringement was "fair use." *Id.*

The parties agree that the Livestreams copied Plaintiff's works by reproducing the Retrospective for commentary. YouTube argues that Plaintiff's infringement claims fail because the copying was fair use. Plaintiff disagrees, and he contends that whether the Livestreams are fair use is, at minimum, a question of fact not suitable for resolution without additional discovery.

The Copyright Act permits copying "for purposes such as criticism, comment, news reporting, teaching. . ., scholarship, or research." 17 U.S.C. § 107. The doctrine "furthers the goal of copyright, namely, to promote the progress of science and the arts, without diminishing the incentive to create." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith ("Warhol")*, 598 U.S. 508, 531 (2023). In determining whether a particular instance of copying constitutes fair use, courts consider: "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." *Id.* "These factors should not be treated in isolation, and instead must be explored and weighed in light of copyright's purpose." *Equals Three, LLC v. Jukin Media, Inc.*, 139 F. Supp. 3d 1094, 1103 (C.D. Cal. 2015) (citing *Campbell v. Acuff–Rose Music, Inc.*, 510 U.S. 569, 578 (1994)).

"Fair use is a mixed question of law and fact." *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1150 (9th Cir. 1986) (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 559 (1985)). If, after taking all inferences in support of the non-moving party, no question remains as to whether a work is fair use, "a court may conclude as a matter of law whether the challenged use qualifies as a fair use of the copyrighted work." *Los Angeles News Serv. v. KCAL-TC Channel 9*, 108 F.3d 1119, 1120 (9th Cir. 1997) (quoting *Hustler*, 796 F.2d at 1150). Thus, the Court may determine whether the Livestreams were fair use at this stage if, after resolving all questions in favor of Plaintiff, only one reasonable answer remains. *Cf. Campbell v. Walt Disney Co.*, 718 F. Supp. 2d 1108, 1111 (N.D. Cal. 2010) (noting "when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.") (quoting *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945)).

Having reviewed the Retrospective and both Livestreams, the Court finds that the Livestreams are fair use as a matter of law.

### a.     Purpose and Character of the Use.

The first factor requires the Court to evaluate "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The central inquiry under the first factor is whether the new work is 'transformative.'" *SOFA Ent., Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1278 (9th Cir. 2013). "Transformative works add something new to an existing work, endowing the first with new expression, meaning, or message, rather than merely superseding the objects of the original creation." *Id.* (quoting *Campbell*, 510 U.S. at 579) (internal marks omitted). The more transformative the work, the less important the other factors, including commercialism. *Campbell*, 510 U.S. at 579. The extent to which a transformative work has a different expression, meaning, or message "is a matter of degree, and the degree of difference must be balanced against the commercial nature of the use." *Warhol*, 598 U.S. at 532.

YouTube first argues that this factor is satisfied by Plaintiff's prior admission that the Livestreams are "highly transformative." (Mot. to Dismiss, at 8:3 (quoting Dkt. No. 15, First Am.

Compl, ¶ 92).) Plaintiff urges that his previous statement should not be dispositive because he now believes the statement to have been in error, and his operative complaint alleges that the Livestreams were not transformative. (*See* SAC, ¶ 175.) The Ninth Circuit has held that "[a] party cannot amend pleadings to directly contradict an earlier assertion made in the same proceeding." *Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d 595, 600 (9th Cir. 2014) (internal citation and quotation marks omitted). The Court finds that, having conceded that Creetosis "started off hot by having a highly transformative work" which contains "ample criticism and commentary" about the Retrospective, Plaintiff cannot now reverse positions in order to save his claims. (First Am. Compl., ¶¶ 86, 92; *see id.* ¶ 86 ("As for the potential fair use, I will freely admit this much: There is *ample* criticism and commentary about my Fallout: New Vegas Retrospective. Yes, I will freely admit that.").)

The Court need not rely on Plaintiff's admission, however, because the transformative nature of the works is evident in the Livestreams themselves. As YouTube points out, Creetosis and the other commentators in the Livestreams air the Retrospective for seconds at a time before pausing to respond and critique the Retrospective. Plaintiff's Retrospective is a 90-minute video which provides Plaintiff's analysis and opinions regarding Fallout: New Vegas. The Livestreams, on the other hand, together constitute more than 14 hours of commentary on Plaintiff's Retrospective, as well as several additional hours regarding other videos produced by Plaintiff and his comments thereon. While Plaintiff sought to critique the video game, Creetosis and the commentators in the Livestreams criticize Plaintiff's videos, not Fallout: New Vegas itself.

For example, the commentators criticize Plaintiff's transitions between video clips, volume control, color modifications, and self-corrections. (*See, e.g.*, Request for Judicial Notice, Ex. A, Sept. 12 Livestream, 4:35:26-4:36:27 (critiquing color and resolution modifications); 4:36:50-4:37:00 (criticizing volume of music during title transition); 4:39:05-4:39:55 (criticizing scene transitions and narration style).) They disagree with Plaintiff's opinions on the game and options therein. (*E.g.*, *id.*, Ex. B, Sept. 15 Livestream, at 0:23:10-0:24:18 (critiquing Plaintiff's characterization of main character as a "chosen one"); 3:40:40-3:46:30 (critiquing Plaintiff's opinions regarding character development, motivation, and dialogue).) They also disagree with

7

certain factual contentions which Plaintiff makes in his Retrospective, and even the philosophical concept of what it means to disagree with factual contentions within a creative work. (*E.g.*, *id.* at 5:59:30-6:03:41 (debating with Plaintiff regarding the meaning of "objective claims").) The Livestreams pause, rewind, and comment on Plaintiff's Retrospective with the purpose of reviewing or mocking the video. *See Equals Three*, 139 F. Supp. 3d at 1104 (finding transformative use where host reacted to and commented on original videos). This criticism is at the heart of the fair use doctrine, and it would lose meaning without reproduction of Plaintiff's video. *See Warhol*, 598 U.S. at 532 (noting "commentary or criticism that targets an original work may have compelling reason to 'conjure up' the original by borrowing from it.").

Further, watching the Livestreams is a fundamentally different experience than watching the Retrospective. The Retrospective is an edited video in which Plaintiff pieces together clips and overlays his commentary. The Livestreams instead feature the commentator's unedited and live reactions. The commentator's unrefined responses, frequent cross-chatter, and engagement with a live virtual audience contribute to the sprawling length of the videos.

The Livestreams were commercialized as, throughout the Livestreams, viewers sent several hundred dollars to Creetosis via "super chats." (SAC ¶¶ 173, 183.) However, it is apparent from the Livestreams that Plaintiff's videos were incidental in generating the revenues. Indeed, many of the super chats did not refer directly to Plaintiff's content at all, but rather served as a way for an audience member to have a comment about their day or about a video game read live on the air. (*See, e.g.*, Sept. 15 Livestream, at 0:20:46 ($2.00 chat to say, "I drive a truck allday [sic] for work so they don't care"); 01:22:50 ($5.00 chat to say, "Victor is an anomaly like Yes Man. Im [sic] willing to bet he's where Benny got that program from for Yes Man."); 09:23:46 ($5.00 chat to say, "after this im dojng [sic] a monty python and venture bros binge to unwind")).) The Court finds that this consideration weighs only slightly against a finding of fair use, and is in any event outweighed by the highly transformative nature of the Livestreams. *See Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (finding commercial use "more incidental and less exploitative in nature than more traditional types of commercial use") (*citing A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1015 (9th Cir. 2001) ("[C]ommercial use is

8

1  demonstrated by a showing that repeated and exploitative unauthorized copies of copyrighted
2  works were made to save the expense of purchasing authorized copies.")).

3  In sum, the Livestreams are highly transformative works. Their transformative nature
4  outweighs their commercialism. This factor weighs sharply in favor of fair use.

**b.     The Nature of the Copyrighted Work.**

The second fair use factor, the "nature of the copyrighted work," 17 U.S.C. section 107(2), "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. The more creative the original work, the less likely that copying will be fair use. *Steward v. Abend*, 495 U.S. 207, 237 (1990). Likewise, unpublished works are entitled to greater copyright protection than published works. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177-78 (9th Cir. 2012).

YouTube contends that the Retrospective is informational, not creative, in nature, and thus far from the core of copyright protection. Plaintiff claims that the Retrospective is a creative work which lies close to the heart of copyright protection. The Court previously found that, "[a]lthough it is a close call," the Retrospective contains sufficient originality to be entitled to copyright protection. (Second Screening Order, at 9:17.) Even so, the Retrospective's purpose is informational in nature: the Retrospective uses clips and commentary to communicate Plaintiff's view of Fallout: New Vegas as well as descriptions of plot options and graphics. *Cf. Stebbins v. Google LLC*, No. 23-CV-00322-TLT, 2023 WL 6139454, at *7 (N.D. Cal. Aug. 31, 2023) ("While Plaintiff presented his opinions [on the video game "Dark Souls"] in the livestream, the work is undoubtedly more informational than creative. As such, the copyright protection is thin.").

Plaintiff argues that this factor should nevertheless weigh in his favor because the Retrospective was unpublished. YouTube argues that Plaintiff is incorrect on the law, and that by posting the Retrospective on YouTube for public dissemination, Plaintiff published the video. The Court agrees with YouTube. *See Perfect 10*, 508 F.3d at 1167 (finding plaintiff "exploited [its] commercially valuable right of first publication by putting its images on the internet for paid

subscribers"). In placing the Retrospective on YouTube, Plaintiff disseminated the video to be "share[d] and re-share[d]." *Brunson v. Cook*, No. 3:20-CV-01056, 2023 WL 2668498, at *11 (M.D. Tenn. Mar. 28, 2023) (considering question and finding that, while "merely making a work available on YouTube, Instagram, and Twitter may not enable an end user to download a copy. However, . . . when a work is posted to platforms such as YouTube, Instagram, and Twitter, the creator loses the ability to control either duplication or further distribution of his or her work. Indeed, the fundamental purpose of social-media platforms such as Twitter and Instagram is for viewers to share and re-share content posted by creators such as Plaintiff.") (internal quotation marks and citations omitted).

Accordingly, this factor weighs in favor of fair use.

### c.   The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole.

The third factor asks what portion of the original work is duplicated in the copy's work and how "well-tailored" that use was to the proper purpose of the copy's work. *Hosseinzadeh v. Klein*, 276 F. Supp. 3d 34, 46 (S.D.N.Y. 2017). "The law is clear, however, that quantity alone is not determinative." *Id.* (citing *Campbell*, 510 U.S. at 588 ("[P]arody must be able to 'conjure up' at least enough of that original to make the object of its critical wit recognizable. . . Copying does not become excessive in relation to parodic purpose merely because the portion taken was the original's heart.")).

Here, Plaintiff claims that the Livestreams copy "literally every single last second" of the Retrospective. (Dkt. No. 67, Opp. to Mot. to Dismiss, ¶ 46.) The Court finds after its review of the Livestreams that this claim is not "literally" true, as the Livestreams skip some seconds of the Retrospective when the commentators rewind and fast forward the Retrospective. The Livestreams also omit video clips which the commentators worried were themselves unlawfully copied by Plaintiff. (*See, e.g.*, Sept. 15 Livestream, at 10:34:12-10:38:33 (minimizing Retrospective from broadcast due to Retrospective's use of clips from professional wrestling events).) Additionally, as YouTube points out, neither Livestream reproduces the Retrospective in its entirety; separate portions of the Retrospective are shown across both videos, which were

performed on different dates.

Even if the Court were to credit Plaintiff's claim that Creetosis copied the entirety of the Retrospective, that would not be dispositive. Creetosis used the Retrospective clips in order to further the Livestream's "transformative purpose of critical commentary." *Hosseindeh*, 276 F. Supp. 3d at 46. The clips of the Retrospective and the commentators' live reactions thereto were essential to Creetosis's own creative works because the clips provided context. Without featuring the original clips, the Livestreams would have lost utility as critical commentary. The extensive copying was necessary to the critique.

The Court thus finds this factor to be neutral or to only slightly weigh against fair use.

### d. The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work.

YouTube argues that a market for the Retrospective cannot plausibly exist. It further argues that the transformative nature of the Livestreams creates a different user experience and thus different market than the Retrospective. Plaintiff argues that the Livestreams usurp market demand for the Retrospective because the Livestreams play the entirety of the Retrospective. The Court agrees with YouTube.

YouTube asks the Court to follow *Hosseinzadeh*. In that case, a district court in the Southern District of New York found that a reaction video was not a market substitute despite copying three minutes and fifteen seconds of the five minute and twenty-four second original video. 276 F. Supp. 3d at 40, 47. The defendants, like Creetosis, played the plaintiff's video for seconds at a time before pausing the video to comment. *Id.* at 40. After reviewing both videos, the Court held:

> it is clear to the Court that the Klein video does not serve as a market substitute for the Hoss video; anyone seeking to enjoy "Bold Guy v. Parkour Girl" on its own will have a very different experience watching the Klein video, which responds to and transforms the Hoss video from a skit into fodder for caustic, moment-by-moment commentary and mockery.

*Id.* at 47.

The Court finds *Hosseinzadeh* persuasive and directly on point. Here, the Livestreams spend more than fourteen hours criticizing the Retrospective, and the Livestream videos together

11

exceed nineteen hours in content. Anyone seeking to watch the Livestreams would have a fundamentally different viewing experience than a person seeking to watch the Retrospective. The Livestreams do not merely play the Retrospective straight through. Instead, they rewind and reply, pause, and talk over the Retrospective video as the panelists engage with each other and with commenters. (*See, e.g.*, Sept. 12 Livestream, at 5:54:06-5:54:42 (rewinding and fast forwarding through video).; Sept. 15 Livestream, at 4:43:54-4:44:35 (same); 5:15:25-15:17:05 (same, at Plaintiff's request); 5:21:00-5:22:05 (same).) The Livestreams also feature Plaintiff himself participating in the chat and responding to criticisms of the Retrospective. (*See, e.g.*, Sept. 15 Livestream, at 8:04:41-8:21:18 (Plaintiff debating with the moderators about an analogy to another game and using footage from another channel). This criticism of and debate regarding the Retrospective serve a different purpose and provide a significantly different viewing experience, and thus does not serve as a market substitute for the Retrospective itself. *See Monge*, 688 F.3d at 1181 (noting that market harm is "less certain" when the copying work is transformative) (quoting *Campbell*, 510 U.S. at 591). The Livestreams are not a market substitute for the Retrospective.

Because the fair use factors weigh strongly in favor of fair use, the Court holds that the Livestreams are fair use and do not infringe the Retrospective as a matter of law.

**C.     The Court Admonishes Plaintiff to Follow Its Standing Orders.**

Plaintiff did not follow the Court's rules regarding page limits or surreplies. Plaintiff's opposition to YouTube's motion to dismiss was 24 pages long, well over the 15-page limit imposed by this Court's standing orders. Plaintiff also filed a surreply, styled as an "objection to reply evidence," without first seeking leave of Court as required by Civil Local Rule 7-3(d). *See* Civ. L.R. 7-3(d)(1) (providing objections to reply evidence "may not include further argument on the motion").

Although Plaintiff is not represented by an attorney, he must follow the Court's rules. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995) (holding, "Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure."). Moving forward, the Court will strike noncompliant filings.

## CONCLUSION

For the foregoing reasons, the Court GRANTS YouTube's motion to dismiss and DENIES Plaintiff's motion to stay. The Court dismisses the remaining claims against YouTube and Creetosis, with prejudice.

**IT IS SO ORDERED.**

Dated: July 2, 2025

_____
JEFFREY S. WHITE
United States District Judge