David Stebbins (pro se Plaintiff)   123 W. Ridge Ave., APT D, Harrison, AR 72601
(870) 212-4947   acerthorn@yahoo.com

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA

DAVID STEBBINS,   PLAINTIFF

VS.   Case 3:22-cv-00546-JSW

ALPHABET INC, ET AL   DEFENDANTS

### MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION

Comes now, pro se Plaintiff David Stebbins, who hereby submits the following Motion for Leave to File Motion for Reconsideration in the above-styled action.

1. In its order granting the Motion to Dismiss, it overlooked numerous key arguments in my Response Brief, including but not limited to...

(a) There was an objectively good reason for me changing my perspective on the transformative nature of the work in between the First and Second Amended Complaints. So unless the Ninth Circuit's prohibition on changing my position is absolute, the Court should give me the benefit of the doubt, or at the very least, explain why my given reasons are not good ones.

(b) In its determination that the transformative nature "speaks for itself," it utterly failed to address my argument that the unrelated and redundant content should be removed from the discussion.

(c) It failed utterly to address my case law citation that opinion-heavy works cause the second factor to favor fair use.

(d) It failed to address my argument that Circular 66 (which applies only to online content) means that the copyrighted work is unpublished, instead deferring to the Perfect 10 case law, where the plaintiff published its content offline using magazines.

(e) When deciding the fourth factor, it completely ignores my assertion, supported by case law, that "by copying all or substantially all of the copyrighted work, the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of

necessity serve the function of the plaintiff's work as well as that of the defendant's." See Hustler Magazine, Inc. v. Moral Majority, Inc., 796 F. 2d 1148, 1154 (9th Cir. 1986).

(f) In addition, the Court ignores completely my multiple case law citations which hold that copying 100% or nearly 100% of the original work necessarily creates a market substitute.

2. In addition to this, the Court itself came up with its own arguments that the defendants had not previously given. However, these arguments should be reconsidered for the following reasons.

3. First, in its finding that the third factor weighed in favor of fair use, the insisted that Creetosis did not use 100% of the original. Its only justification for making that finding was because Creetosis would, very occasionally (though not very often), rewind, reply, and sometimes fast forward. However, the Court failed to offer any case law citation that shows that nominally rewinding and reviewing certain portions of the original, before fast-forwarding back to the place you were previously at, constituted not using 100% of the original.

4. Think about this way: Can the Court actually point to any one word that I actually physically said* in the original Fallout New Vegas Retrospective that didn't make it into Creetosis's reaction stream? Not just whether he rewinded and viewed the clips out of order, but at least one actual thing said by me* in the original video that wasn't in the reaction stream *at all?* If not, then why shouldn't that, in itself, constitute using 100%, even if he (very rarely) rewinded and rewatched a certain excerpt?

5. The Court should address that in its response to this motion.

6. Then, it said that, even discounting that, Creetosis's generous taking of my original video was "essential" (not just "reasonable," as the defendants asserted, but *essential*). However, the Court's only justification for that finding was that "the clips provided context. Without featuring the original clips, the Livestreams would have lost utility as critical commentary."

7. The Court seems to intentionally misread the law. I fully concede that, under fair use law, Creetosis was allowed to use my copyrighted content in the first instant. If he were required not

---

* Remember that my original commentary is the only portion of the Fallout New Vegas Retrospective that I claim copyright over. So if he removed any other portion of the original video, that doesn't count.

to, then yes, the livestreams would indeed have "lost utility as critical commentary." But was it truly necessary for him to use *the entire video?!* What, is the Court making the finding that, had Creetosis removed *even one sentence* from the original video from his livestream copying, a large portion of his critical commentary would have completely fallen apart at the seems? If so, then it should state its position clearly. But if not, then it should give me my day in court and give me an opportunity to litigate and argue why he could have made his point effectively while using less than 100%. Remember that this was a motion to dismiss, not a motion for summary judgment, which means that it must be mindful of my right to my day in court before it throws the case out.

8.      Furthermore, the Court failed to consider alternatives to direct copying. For example, couldn't Creetosis have safeguarded against missing context through the simple expedient of providing his viewers with a link to my original video?

9.      To show you what I mean, look at this video of mine: https://youtube.com/shorts/naTQnpMYuw0. This is a video where I call out another content creator, specifically because she removes essential context from the clip she was criticizing, which, in opinion, undermined and even defeated her criticism. In the description of my short, I provided a link, both to Cassie's critical TikTok, as well as the original video she was criticizing. By providing the second link, I was able to prove that the context I alleged was indeed in the original, precisely as I described it. Meanwhile, by providing a link to Cassie's critical TikTok, I was able to give my viewers a means to verify if I was guilty of the very thing I criticized Cassie for doing (leaving out critical context that completely changed the situation) without having to play 100% of Cassie's video.

10.     So, is the Court finding that, if Creetosis had done something similar, it wouldn't have worked? Would his criticism of my video have unraveled had he only copied the very portions he was criticizing and just provided a link to the original video to enable his viewers to do the rest? If so, then the Court should say that explicitly, and also provide evidence to back up its finding.

11.     But even barring that, the Court, once again, completely ignores my case law citations. I cited to multiple binding precedents which explicitly state that, when 100% of the original is

copied, then the third factor must weigh against fair use, full stop. Remember that, by the time it finds the copying was essential, it concedes for the sake of argument that 100% of the original is indeed used. So by that point, it simply isn't the District Court's decision to make: The Ninth Circuit has unequivocally held that the District Court *must* rule in my favor, and just like with the arguments mentioned in ¶ 1 above, the Court ignores this case law citation in its entirety.

12.     Then, there's the Court's findings regarding the fourth factor. The Court finds that the livestreams "spend more than fourteen hours criticizing the Retrospective," but this finding is clearly against the weight of the evidence. As I explained in my Response Brief (and which the Court completely ignored), while the streams may certainly be 14 hours long in total, it is far from 14 hours of non-stop criticism. The Court should go back and reconsider its position.

13.     Then, there is the fact that the Court makes the finding that the livestreams create a "very different" experience. But it never cites to any binding legal precedent that states that "being different" necessarily translates to "not a market substitute." It cites only to Hosseinzadeh v. Klein, but that is a New York District Court case that is not binding precedent. While other district court cases can be valuable persuasive precedent, the district court must first make sure it is complying with binding precedent before it turns to persuasive precedent, and here, the District Court has completely ignored the binding precedent of Hustler v. Moral, which states that "by copying all or substantially all of the copyrighted work, the distinction of function vanishes since whatever the intent of the copier, a verbatim reproduction will of necessity serve the function of the plaintiff's work ***as well as*** that of the defendant's" (emphasis added, quotations omitted). The Court has completely ignored my citation to that binding precedent and it should rectify that error.

14.     That emphasis added in that last excerpt is important, because it raises a very important question: Is it possible for a secondary work to serve two or more functions at once? If so, then the fourth factor is not resolved simply by finding that the secondary use gives the viewers "a" different experience, and the Court has not therefore found a lack of market substitute.

15.     In short, the fourth factor of fair use can be succinctly defined with a simple question: Whereas the first factor asks "what does the secondary use provide to audiences that the original

does not" (a question which is often easily answered), the fourth factor in turn asks "what does the original provide to audiences that the secondary use does not?"

16. To help illustrate this difference, think about the similarities and differences between a driver's license and a state ID. Both serve as identification, thereby enabling you to legally purchase tobacco, alcohol, or pornography if you are of the correct legal age, granting you access to certain restricted areas, and serves as legal proof of who you are. But regarding the former question – what does a driver's license provide to its audience that a state ID doesn't – the answer to that question is obvious: It also authorizes its owner to legally operate a motor vehicle. To that end, a driver's license is "transformative" over a state ID. But regarding the second question – what does a state ID provide to its audience that a driver's license does not – the answer to that question is "nothing at all," which is why you never see anyone carry both. If they have a driver's license, they have absolutely zero need for a state ID. Therefore, a driver's license, although "transformative" over a state ID, is still a market substitute for it.

17. Returning to the instant case, I ask the Court this: What does my original video (and more importantly, my original commentary in said video, as that is the only portion of the video I claim copyright over) offer to my audience that that same audience *doesn't* get by watching Creetosis's livestream? The Court has not answered that, instead declaring (rather arbitrarily, at that) that Creetosis's livestreams are "very different" from my video but never explaining what exactly that means.

18. The Court should rectify that deficiency in response to this motion, and in doing so, it should take care to make sure it is complying with all binding precedent *before* it defers to out-of-circuit persuasive precedent.

## CONCLUSION

19.     Wherefore, premises considered, I respectfully pray that this motion be granted.

So requested on this, the 22nd day of July, 2025.

*/s/ David Stebbins*
David Stebbins
